**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Rainworks Limited, et al. | ) | CASE NO. 1:06-CV-1549 |
| | ) | |
| Plaintiffs, | ) | JUDGE BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| The Mill-Rose Company, et al. | ) | PLAINTIFFS' JOINT MOTION FOR |
| | ) | PARTIAL SUMMARY JUDGMENT |
| Defendants. | ) | |
| | ) | |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Local Rules 7.1 and 7.2,

Plaintiffs Rainworks Limited and Michael Herdman hereby move for a partial summary

judgment in their favor against Defendants AmeriSales, Inc., GutterPiller, Inc., and The Mill-

Rose Company on Counts 1, 6, 7, 9, 13, and 15 of Plaintiffs' Amended Complaint. The reasons

for this Motion are set forth in the attached Memorandum in Support.

Respectfully submitted,

/s/ H. Alan Rothenbuecher
H. Alan Rothenbuecher (0041883)
  hrothenbuecher@szd.com
T. Earl LeVere (0063515)
  elevere@szd.com
Schottenstein Zox & Dunn Co., LPA
US Bank Centre at Playhouse Square
1350 Euclid Ave., Suite 1400
Cleveland, Ohio 44115

*Attorneys for Plaintiffs Rainworks Limited*
*and Michael Laurence Herdman*

## Table Of Contents

Page

SUMMARY OF ARGUMENT ...................................................................................... iv
SUMMARY OF ISSUE PRESENTED ........................................................................... v
MEMORANDUM IN SUPPORT ................................................................................... 1
I.     INTRODUCTION ................................................................................................ 1
II.    STATEMENT OF FACTS .................................................................................. 2
III.   STANDARD OF REVIEW .................................................................................. 6
IV.   LAW AND ARGUMENT ..................................................................................... 7
     A.    Defendants AmeriSales and GPI Have Breached the License Agreement
          as a Matter of Law (Count 9). ................................................................ 7
         1.    Defendants Admit That They Had An Agreement. ...................... 8
         2.    Plaintiff Rainworks Performed as Required. ............................... 9
         3.    Defendants AmeriSales and GPI Breached the Agreement. ........ 9
              a)    Defendants Failed to Pay Minimum Royalties. ............... 9
              b)    Defendants Sold Products Via The Internet. .................. 10
              c)    Defendants Failed to Pay Royalties on Actual Sales. ...... 11
              d)    Defendants Sold GutterPiller Products After Termination. ........... 12
         4.    Defendants' Breach Damaged Plaintiff Rainworks. .................. 12
     B.    Defendants AmeriSales, GPI, and Mill-Rose are Liable for Patent
          Infringement Under the Doctrine of Patent Marking Estoppel. ............. 13
     C.    Defendants are Liable for False Advertising, Deceptive Trade Practices,
          Unfair Competition, and False Marking (Counts 6, 7, 13, and 15). ...... 16
         1.    Defendants AmeriSales, GPI, and Mill-Rose Have All Engaged in
             False Marking. ..................................................................... 16
              a)    Defendants Marked the GutterPiller Products as "Patented"
                   and as Protected by the '068 Patent Until Well Into 2007. ........... 17
              b)    Defendants Admit That They Believe The GutterProducts
                   Are Not Patented or Covered by the '068 Patent. ........... 18
              c)    Defendants Acted With Intent To Deceive As a Matter of
                   Law. ........................................................................ 19
         2.    Plaintiffs Are Entitled to a Judgment as a Matter of Law That
             Defendants Engaged in False Advertising, Deceptive Trade
             Practices, and Unfair Competition. ........................................ 20
              a)    Defendants Made Statements About Their Products That
                   They Argue and Believe Are Literally False. .................. 21
              b)    Defendants' Admittedly False Statements Were Material. ........... 22
              c)    Defendants Introduced the Advertisements Into Interstate
                   Commerce. .............................................................. 23
              d)    Defendants Statements Harmed Plaintiff. ...................... 24
V.    CONCLUSION .................................................................................................. 25
CERTIFICATE OF SERVICE ..................................................................................... 27

## Table Of Authorities

Page

**Statutes**

15 U.S.C. 1125.................................................................................................................... 21

35 U.S.C. § 282 (1994)......................................................................................................... 6

35 U.S.C. § 292...................................................................................................... 16, 17, 19

**Rules**

Fed. R. Civ. Proc. 56(c) ........................................................................................................ 6

**Cases**

Acromed Corporation v. Sofamor Danek Group, Inc., 1996 U.S. Dist. LEXIS 22704 (N.D. Ohio
    1996) .......................................................................................................................... 14, 16

American Council of Cert. Podiatric Physicians v. Amer. Board of Podiatric Surgery, 185 F.3d
    606 (6th Cir. 1999 ........................................................................................................ 20, 21

American Council of Certified Podiatric Physicians & Surgeons, 185 F.3d at 614); .................. 21

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).............................................................. 6

Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141 (1989)........................................ 23

Boyd v. Schildkraut Giftware Corporation, 936 F.2d 76 (2nd Cir. 1991).................................... 14

Canaan Products, Inc. v. Edward Don & Co., 273 F. Supp. 492 (N.D. Ill. 1966),
    aff'd, 388 F.2d 540 (7th Cir. 1968)................................................................................. 14, 15

Clontech Laboratories, Inc. v. Invitrogen Corp., 406 F.3d 1347 (Fed. Cir. 2005) ........... 17, 19, 23

Crane Co. v. Aeroquip Corp., 364 F. Supp. 547 (N.D. Ill. 1973)................................................ 16

Deters v. Rock-Tenn Co., 2007 U.S. App. LEXIS 20422 (6th Cir. 2007....................................... 9

DP Wagner Mfg. Inc. v. Pro Patch Systems, Inc., 434 F.Supp.2d 445; 2006 U.S. Dist
    LEXIS 28397 ....................................................................................................................... 19

Elite Licensing, Inc. v. Thomas Plastics, Inc., 250 F. Supp. 2d 372 (S.D.N.Y 2003)................... 15

FPC Corp. v. Uniplast, Inc., 964 F. Supp. 1212 (N.D. Ill. 1997) ............................................... 21

Gregg v. Allen-Bradley Co., 801 F.2d 859 (6th Cir. 1986)......................................................... 7

Gridiron Steel Co. v. Jones & Laughlin Steel Corp., 361 F.2d 791 (6th Cir. 1966).................... 14

Hassell v. Chrysler Corp., 982 F. Supp. 515 (S.D. Oh. 1997), aff'd mem.,
    135 F.3d 778 (Fed. Cir. 1998 ............................................................................................... 20

Hedrick v. W. Reserve Care Sys., 355 F.3d 444 (6th Cir. 2004).................................................. 9

Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc., 270 F.3d 298 (6th Cir. 2001)................... 20

Hutchinson v. Pfeil, 211 F.3d 515 (10th Cir 2000), cert. denied, 531 U.S. 959 (2000) ............... 25

Icon Health & Fitness, Inc. v. The Nautilus Group, Inc., 2006 U.S. Dist. LEXIS 24153
    (D. Utah 2006) ................................................................................................................... 21

Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc., 326 F.3d 687 (6th Cir. 2003)...... 21

Johnson & Johnson, Inc. v. GAC Int'l, Inc., 862 F.2d 975 (2d Cir. 1988) .................................. 21

Kirkland v. St. Elizabeth Hosp. Med. Ctr., 34 Fed. Appx. 174 (6th Cir. 2002) ............................ 7

Lathrop v. Rice & Adams Corp., 17 F. Supp. 622 (W.D.N.Y. 1936)............................................ 14

Leadbetter v. Gilley, 385 F.3d 683 (6th Cir. 2005) .................................................................... 9

Lear, Inc. v. Adkins, 395 U.S. 653 (1969 ................................................................................... 23

M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., 439 F.3d 1335 (Fed. Cir. 2006) ........... 21

Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) .......................... 6

Mitchell v. Toledo Hospital, 964 F.2d 577 (6th Cir. 1992)......................................................... 7

Nilavar v. Osborn, 711 N.E.2d 726 (Ohio Ct. App. 1998) ............................................................ 7

Outdoor Technologies, Inc. v. Vinyl Visions, LLC, 2006 U.S. Dist. LEXIS 73337 *8 (S.D. Ohio
    2006) .............................................................................................................................................. 22

Piaget Novelty Co. v. Headley, 108 F. 870 (2nd Cir. 1901) ........................................................ 14

Porous Media Corp. v. Pall Corp., 110 F.3d 1329 (8th Cir. 1997) .............................................. 25

PPX Enters., Inc. v. Audiofidelity Enters., Inc., 818 F.2d 266 (2nd Cir. 1987) ........................... 21

Regscan, Inc. v. Dean Mark Brewer, 2006 U.S. Dist. LEXIS 95539 (E.D.Pa. 2006) .................. 21

Royal Appliance Mfg. Co. v. Hoover Co., 845 F. Supp. 469 (N.D. Ohio 1994) ........................... 20

Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989) ........................................................ 6

Transdermal Products, Inc. v. Performance Contracting Packaging, Inc., 943 F.Supp. 551 (E.D.
    Pa. 1996) ...................................................................................................................................... 22

U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034 (9th Cir. 1986) ............................................... 21

Wine Ry. Appliance Co. v. Enterprise Ry. Equipment Co., 297 U.S. 387 (1936) ........................ 23

WMS Gaming, Inc. v. Int'l Game Tech., 184 F.3d 1339 (Fed. Cir. 1999) ...................................... 6

## SUMMARY OF ARGUMENT

Plaintiff Michael Herdman is the owner of U.S. Patent No. D381,068 ("the '068 Patent"). Plaintiff Herdman and his company, Plaintiff Rainworks Limited, entered into a license agreement that allowed Defendants AmeriSales, Inc. ("AmeriSales") and GutterPiller, Inc. ("GPI") to manufacture, sell, and offer for sale products covered by the '068 Patent. The license agreement carried certain limitations relevant to the instant motion. First, the license required the payment of royalties on all authorized sales of covered products with certain minimum royalty expectations for each year. Second, the license agreement expressly precluded Defendants from selling covered products via the Internet and reserved that right exclusively to Plaintiff Rainworks. Finally, the license agreement provided that Defendants would not sell competing products for one year after the termination of the license agreement. Defendant The Mill-Rose Company ("Mill-Rose") manufactured, packaged, and shipped the products for Defendants AmeriSales and GPI.

Plaintiffs and Defendants proceeded under the license agreement from its original execution in June 2000 until early in 2003. During this time, Defendants AmeriSales and GPI failed to pay the royalties on all of their sales and failed to pay the minimum royalties required by the agreement. Defendants also sold covered products online in direct violation of the license agreement. For these reasons, and others, Plaintiff Rainworks terminated the license agreement in 2003. After the termination of the agreement, however, Defendants continued to manufacture, sell, and offer for sale products that were covered by the license agreement. Until 2007, Defendants continued to market and sell the products as "patented" and as covered by the '068 Patent despite now believing that their products did not fall under the '068 Patent or any other patent.

iv

Defendants' failure to pay royalties and selling products via the Internet constitute breaches of the license agreement. Defendants' continued production and sale of covered products after the termination of the agreement constitute violations of the non-compete provision of the license agreement and also constitute infringement of the '068 Patent. Having marked the products as patented for seven years, Defendants are now precluded from denying infringement under the doctrine of patent marking estoppel. Additionally, if Defendants are correct in their assertion that their products do not infringe the '068 Patent, Defendants are liable under state and federal law for false advertising, deceptive trade practices, unfair competition, and false marking as a result of their consistent and ongoing advertising and marking of the products as "patented" and protected by the '068 Patent.

## SUMMARY OF ISSUE PRESENTED

Plaintiffs Rainworks and Herdman present the following issues for this Court's resolution:

- Whether Plaintiff Rainworks is entitled to a summary judgment of liability that Defendants AmeriSales and GPI have breached the License Agreement and/or the First Amendment thereto;

- Whether Plaintiffs Herdman is entitled to a summary judgment that Defendants AmeriSales, GPI, and Mill-Rose are liable for patent infringement under the doctrine of patent marking estoppel; and

- Whether Plaintiffs Herdman and Rainworks are entitled to a summary judgment that Defendants AmeriSales, GPI, and Mill-Rose are liable for false advertising, deceptive trade practices, unfair competition, and false marking under Ohio and federal law.

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

Plaintiff Herdman is a New Zealand resident and is the owner of U.S. Patent No. D381,068 (hereafter the "'068 Patent") for a device that prevents leaves and other debris from entering a user's gutter.    Plaintiff Herdman and his company, Plaintiff Rainworks Limited ("Rainworks"), had a deal with Defendant AmeriSales, Inc. ("AmeriSales") and later GutterPiller, Inc. ("GPI") whereby Defendants became the exclusive United States and European manufacturer and distributor of products covered by the '068 Patent.    Defendant The Mill-Rose Company ("Mill-Rose") manufactured the covered products and procured the products' packaging for Defendants AmeriSales and GPI.

In exchange for the right to manufacture and sell covered products, Defendants were to pay specified royalties to Plaintiff Rainworks.    Defendants, however, failed to pay the royalties required on authorized sales of covered products and further sold products via the Internet in direct violation of the agreement.    These actions, among others, eventually forced Plaintiffs to terminate the license agreement.    After the termination, however, Defendants AmeriSales and GPI continued to market and sell covered products in direct violation of Plaintiffs' patent rights and continued to mark their unauthorized gutter protection products with Plaintiffs' patent number, despite now specifically arguing that they never believed that the '068 Patent covered their products.

Plaintiffs Herdman and Rainworks now seek a partial summary judgment of liability in their favor against Defendants AmeriSales, GPI, and Mill-Rose on three issues.    First, on Count 9 of their Amended Complaint, Plaintiffs seek a judgment as a matter of law that Defendants AmeriSales and GPI breached the license agreement by failing to pay the requisite royalties on

authorized sales, by selling covered products on the Internet, and by selling covered products during the non-competition period after the termination of the agreement. Second, on Count 1 of their Amended Complaint, Plaintiffs seek a judgment that Defendants AmeriSales, GPI, and Mill-Rose have all infringed the '068 Patent as a matter of law under the doctrine of patent marking estoppel by virtue of their repeated and consistent use of the '068 Patent number on their accused products, packaging, and advertising materials. Finally, on Counts 6 and 13, Plaintiffs seek a judgment that Defendants AmeriSales, GPI, and Mill-Rose are liable for false advertising, Ohio deceptive trade practices, unfair competition, and false marking as a result of promoting and selling a product as "patented" and covered by the '068 Patent when they allegedly believed it was not. The record lacks sufficient evidence to allow a reasonable jury to find in Defendants' favor on any of these issues. Accordingly, this Court should enter a partial judgment in Plaintiffs' favor on Counts 1, 6, 7, 9, 13, and 15 as a matter of law.

## II.   STATEMENT OF FACTS

After retiring from a successful broadcasting, television, and theatre career, Plaintiff Herdman (p/k/a "Laurie Dee"), a citizen and resident of New Zealand, formed Plaintiff Rainworks to market and sell a series of gutter protection products that he had invented and patented. Verified Complaint at ¶ 1. Plaintiffs' GutterPiller product is a three dimensional bristle filter system for harvesting rainwater and protecting gutters. Id. at ¶ 12. Plaintiffs' primary product (marketed by Plaintiffs as the "Hedgehog" in New Zealand and Australia and as the GutterPiller in the United States and Europe) has received critical acclaim and has become highly regarded as an innovative yet simple solution to a growing problem. Id. at ¶ 1. The Hedgehog and its United States branded GutterPiller have won several awards, including the best new hardware product at the 2001 Australian Hardware Show and the Retailers Choice Award at the 2001, 2004, and 2005 American Hardware Shows. Id. at ¶ 13; Deposition of Thomas Duffy

at 225:2-225:10.[1] Plaintiffs' Hedgehog/GutterPiller is patented in Australia, Germany, and the United States. Verified Complaint at ¶ 15. Mr. Herdman obtained the '068 Patent for the Hedgehog in 1997, which he still owns. Id.

Upon their introduction, Rainworks' products quickly obtained commercial success and acceptance in New Zealand and Australia. Because of this success, Rainworks desired to market and sell the products in the United States. To overcome the distance, Rainworks sought out a U.S. partner to represent its products. Rainworks met Defendant Thomas Duffy, who expressed an interest in manufacturing, marketing, and selling Rainworks' patented products. Verified Complaint at ¶ 25; Duffy Depo. at Ex. 2. On or about June 23, 2000, Defendant Duffy's company, Defendant AmeriSales, entered into an agreement with Rainworks whereby Defendant AmeriSales could sell Rainworks' GutterPiller products in the U.S. in exchange for a royalty on sales. The agreement gave Plaintiff Rainworks the right to terminate the license of Defendant AmeriSales if AmeriSales did not meet the minimum royalty expectation. On or about February 22, 2001, Rainworks and AmeriSales amended their agreement in writing inter alia to extend Defendant AmeriSales' exclusive license to Europe and to add additional minimum royalty. Verified Complaint at ¶ 29; Duffy Depo. at Ex. 3.[2] Defendants Duffy and AmeriSales enlisted a German company to manufacture and package Rainworks' products and Duffy and AmeriSales took the product to market. See Duffy Depo. at 130:24-131:4.

Specifically, pursuant to the terms of the License Agreement, Plaintiff Rainworks granted Defendant AmeriSales an exclusive license to manufacture and market Rainworks' gutter

---

[1] References to excerpts of deposition testimony refer to the page number and line number separated by a colon.

[2] True and accurate copies of the License Agreement and the First Amendment to the License Agreement are attached hereto as Exhibits 1 and 2, respectively, and were marked and authenticated as Exhibits 2 and 3 in the May 24, 2007, deposition of Thomas Duffy. While Defendant Duffy disputes that he actually signed and initialed Exhibit 1 hereto, he does not dispute that he signed Exhibit 2 (i.e., Duffy Deposition Ex. 3), which incorporates by reference all the terms and conditions of Exhibit 1. See Transcript of Duffy Deposition ("Duffy Depo.") at page 22, line 19 – page 23, line 2.

protectors, gutter spades, and gutter brushes in North, Central, and South America. See Exhibit 1 hereto; Duffy Depo. Ex. 2. Defendant AmeriSales promised to pay Rainworks a royalty based upon sales of product and agreed to a minimum royalty per year. Id. Defendant AmeriSales expressly agreed that Plaintiff Rainworks retained the sole right to market and sell the products via the Internet. Exhibit 1 hereto. Defendant AmeriSales also agreed that it would cease manufacturing gutter protectors, stop using all brand names associated with Plaintiff Rainworks' gutter protectors, and discontinue use of Plaintiff Rainworks' intellectual property upon the termination of the License Agreement. Id.

In February 2001, Plaintiff Rainworks and Defendant AmeriSales amended the License Agreement to expand AmeriSales' exclusive rights to manufacture and market the products into Europe in exchange for an additional guaranteed minimum royalty. Verified Complaint at ¶ 29; Exhibit 2 hereto. Plaintiff Rainworks also granted Defendant AmeriSales permission to sub-license its rights under the License Agreement to a German company. Verified Complaint at ¶ 29; Exhibit 2 hereto. Otherwise, the terms and conditions of the License Agreement remained unchanged.

Sometime after the original license agreement, Defendant Duffy formed Defendant GPI, which began selling the gutter protection products contemplated by the license. Verified Complaint at ¶ 31; Duffy Depo. at 55:4-55:12. Defendants AmeriSales and GPI paid some royalties under the license agreement and the amendment (see Duffy Deposition Exs. 6-8) but they did not pay royalties for all sales of covered products and they never paid the full minimum required American and European royalties.

Additionally, without Plaintiffs' knowledge or consent, and despite the clear prohibition in the License Agreement, on or about February 12, 2002, Defendant GPI registered the domain

name www.gutterpiller.com and thereafter began selling unlicensed and infringing gutter protection products from that website. Verified Complaint at ¶ 37; Duffy Depo. at 71:8-71:10.

As a result of AmeriSales and GPI's failure to pay the minimum royalties, and for other reasons, Plaintiff Rainworks sent Defendants multiple notices of termination of the license agreement. Despite these notice, Rainworks, AmeriSales, and GPI continued discussions in an effort to resolve their differences and maintain the license agreement. On or about October 31, 2002, Defendant GPI paid Plaintiff Rainworks certain additional non-royalty amounts in order to delay the termination of the license agreement. See Duffy Depo. Exs. 45 and 57. Thereafter, until early 2003, the parties continued to work together to try and resolve their disputes and to allow Defendants to continue selling GutterPiller gutter filters. Duffy Depo. at 246:18-248:7.

Despite the termination of the license agreement and despite their undeniable familiarity with the '068 Patent, AmeriSales and GPI continued to market and sell the GutterPiller products even after the termination of the license agreement. Duffy Depo. Exs. 42-43. This time, however, they used a different manufacturer – Defendant Mill-Rose. Plaintiff Herdman had approached Defendant Mill-Rose in 1997 about making, marketing, and selling his patented gutter filters, but ultimately Defendant Mill-Rose declined to do so because the gutter filters did not fit Mill-Rose's market profile. Verified Complaint at ¶ 18.[3] Defendant Mill-Rose, however, agreed to manufacture the GutterPiller products for Defendants AmeriSales and GPI. Verified Complaint at ¶ 39; Miller Depo. at 8:4-8:10.

Defendant GPI, through the assistance of Defendant Mill-Rose, still sells the same GutterPiller products to this day and has admitted to nearly $1 million in sales from May 2002 through December 2006. See Duffy Depo. at 237:23-238:2 and Ex. 42-43. And for nearly a

---

[3] Prior to 1997, Mill-Rose attempted to manufacture a gutter filter for commercial use, but was unsuccessful in its efforts. Deposition of Paul Miller at 138:10-139:24 and Miller Ex. 20.

year *after* the filing of this lawsuit, well into 2007, Defendants continued to show the '068 Patent number on their packaging and promotional materials and continued to market the GutterPiller products as "patented" and as being covered by Plaintiff Herdman's '068 Patent. Duffy Depo. at 9:9-16:6; 68:10-70:9; 146:6-24; 161:12-162:20; 164:13-168:14; 208:5-214:4; 273:22-276:3 and Duffy Depo. Exs. 1, 16, 21, 22, 34, 35, and 52.

## III.   STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c).  Summary judgment is improper only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment . . ." (Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989)) and to designate specific facts in dispute (Anderson, 477 U.S. at 250). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

For example, a patent is presumed to be valid, 35 U.S.C. § 282 (1994), and this presumption can be overcome only by facts supported by clear and convincing evidence to the contrary. See, e.g., WMS Gaming, Inc. v. Int'l Game Tech., 184 F.3d 1339, 1355 (Fed. Cir. 1999). Moreover, infringement and validity are separate inquiries and a prima facie case for invalidity, even when present, does not create a genuine issue of material fact on the issue of infringement. The court must assess "whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact

because they may reasonably be resolved in favor of either party." <u>Anderson</u>, 477 U.S. at 250.

"If the evidence is merely colorable, . . . , or is not significantly probative, . . . , the court may

grant judgment." <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted). The United States Supreme

Court has held:

> The mere existence of a scintilla of evidence in support of the plaintiff's position
> will be insufficient; there must be evidence on which the jury could reasonably
> find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether
> reasonable jurors could find by a preponderance of the evidence that the plaintiff
> is entitled to a verdict. . . .

<u>Anderson</u>, 477 U.S. at 252. Hence the "mere possibility" of a factual dispute will not suffice.

<u>Mitchell v. Toledo Hospital</u>, 964 F.2d 577, 582 (6th Cir. 1992) (quoting <u>Gregg v. Allen-Bradley</u>

<u>Co.</u>, 801 F.2d 859, 863 (6th Cir. 1986)).

Based upon the evidence in the record, a reasonable jury could only conclude that

Defendants AmeriSales, GPI, and Mill-Rose have infringed the '068 Patent under the doctrine of

Patent Marking Estoppel. Likewise, there can be no dispute that Defendants AmeriSales and

GutterPiller breached their license agreement with Plaintiff Rainworks. Finally, given

Defendants' undisputed pattern and practice of marketing and selling the GutterPiller products as

being covered by the '068 Patent, when they now testify that they believe it is not, Defendants

are also liable for false advertising, deceptive trade practices, unfair competition, and false

marking as a matter of law.

## IV.    LAW AND ARGUMENT

### A.    Defendants AmeriSales and GPI Have Breached the License Agreement as a Matter of Law (Count 9).

To establish a breach of contract, a plaintiff must prove (1) the existence of a contract; (2)

performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff.

<u>Kirkland v. St. Elizabeth Hosp. Med. Ctr.</u>, 34 Fed. Appx. 174, 178 (6th Cir. 2002) (citing <u>Nilavar</u>

v. Osborn, 711 N.E.2d 726, 732 (Ohio Ct. App. 1998)).  There can be no dispute that Defendants

AmeriSales and GPI have breached their agreement with Plaintiff Rainworks by (1) failing to

pay the required minimum royalties, (2) selling the GutterPiller via the internet, (3) failing to pay

royalties on numerous admitted sales, and (4) selling GutterPiller products during the one-year

non-compete period" after the termination of the license agreement.[4]  Defendants have admitted

all of these facts and, as a result, Plaintiff Rainworks is entitled to a judgment as to liability as

matter of law on Count 9 of its Amended Complaint.

### 1. Defendants Admit That They Had An Agreement.

The undisputed evidence shows that the parties had an agreement.  Exhibits 1 and 2

hereto (and Duffy Depo. Exs. 2 and 3) are the parties' June 23, 2000, License Agreement and

February 22, 2001, First Amendment to License Agreement, respectively.  The exhibits each

bear the signatures of Plaintiff Herdman (professionally known as Laurie Dee) as Rainworks'

Managing Director and Defendant Duffy as Defendant AmeriSales' president.  And, while

Defendant Duffy now attempts to dispute that he actually executed the original License

Agreement (see, e.g., Duffy Depo. at 18:19-19:17), there is no dispute that Defendant Duffy

executed the First Amendment to the License Agreement.  Duffy Depo. at 22:11-23:2 and Duffy

Ex. 3.  Clause 7.1 to the First Amendment expressly provides, "Subject to the amendments

above, all other terms in the License Agreement shall remain in full force and effect, enforceable

in accordance with their terms."[5]  Thus, while Defendant Duffy may seek to dispute that he

actually executed the June 23, 2000 License Agreement, his inability to recall signing the initial

document does not create a "genuine" issue of fact on this point nor is this issue "material" for

---

[4] Defendants breached the agreement in other ways as well but, for purposes of this motion, Plaintiff Rainworks
will only address those listed above.

[5] The "Definitions" section of the First Amendment specifically defines "Amendment" as "this first amendment to
the License Agreement" (Exhibit 2 hereto at Clause 1.1) and defines the "License Agreement" as "that certain
License Agreement between RWL [Rainworks] and ASI [AmeriSales] dated 23 June 2000" (Exhibit 2 hereto at
Clause 1.2).

purposes of this motion in light of Defendant Duffy's admitted execution and adoption of the First Amendment.[6]

### 2. Plaintiff Rainworks Performed as Required.

There is also no evidence to suggest that Plaintiff Rainworks failed to perform under the License Agreement. Pursuant to the License Agreement and the First Amendment, Plaintiff Rainworks provided Defendants the exclusive right to manufacture and sell the GutterPiller products in North America and Europe. Defendants do not suggest that Rainworks hindered their ability to sell products in any way. In fact, after the contract was terminated by Plaintiffs, GutterPiller paid $2,000 to Plaintiffs to keep the license agreement alive.[7] Duffy Depo. at 246:5-248:8 and Duffy Ex. 45.

### 3. Defendants AmeriSales and GPI Breached the Agreement.

#### a) Defendants Failed to Pay Minimum Royalties.

Not only do the facts require a finding of an agreement and its performance by Rainworks, the record compels a finding that Defendants AmeriSales and GPI breached the License Agreement and the First Amendment in several ways. Specifically, neither Defendant AmeriSales nor Defendant GPI ever paid the required minimum royalties either for North America or for Europe. For example, by fax dated July 3, 2002, Defendants admit that they only paid $3,995.51 in total royalties for 2001. See Duffy Depo. Ex. 6 at p.2 and 48:5-48:13 (while

---

[6] See Deters v. Rock-Tenn. Co., 2007 U.S. App. LEXIS 20422, 12-13 (6th Cir. 2007) (stating, "Not just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a genuine issue of material fact. Leadbetter v. Gilley, 385 F.3d 683, 689-90 (6th Cir. 2005). A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party. Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 451 (6th Cir. 2004). A factual dispute concerns a 'material' fact only if its resolution might affect the outcome of the suit under the governing substantive law. Id.").

[7] Defendants may seek to create a factual issue based upon their subsequent notice to Plaintiffs of an alleged breach of the agreement. See Duffy Depo. at 241:24-243:12 at Duffy Ex. 44. Defendants' notice does not create a genuine factual issue, however, because the Plaintiffs' allegedly breaching conduct followed Defendants' undisputed breaches of the agreement. Defendant Duffy's declaration of breach is also telling insofar as it references, by number, specific provisions of the original license agreement (Duffy Depo. Ex. 2), thus completely contradicting Defendant Duffy's testimony that he never signed or agreed to the provisions in the original license agreement.

reviewing with Defendant Duffy the original of the fax of Exhibit 6 that Rainworks received from Defendants, admitted that the original shows the "Amount due for year 2001 per contract" is $7,500 and the "Total amount paid to date [July 3, 2002] for year 2001" is $3,995.51). It is important to note, however, that notwithstanding Defendants' calculation in Duffy Depo. Ex. 6, the First Amendment to the License Agreement (dated February 22, 2001) calls for a total minimum royalty for 2001 of $15,000 — $7,500 for North American and $7,500 for Europe (Exhibit 3 hereto at p.1). Regardless, Duffy Depo. Ex. 6 is an admission by Defendants that they did not pay even half of the minimum royalties for 2001. Likewise, there is no evidence in the record that Defendants paid the North American or European minimum royalties for 2002. Any of these failures constitutes a breach of the agreement and the failure to pay the North American minimum royalties for 2001 and 2002 justifies the termination the agreement.

> **b)     Defendants Sold Products Via The Internet.**

Defendants also breached the agreement by selling GutterPiller products via the Internet. Clause 4 of the License Agreement (incorporated by reference into the First Amendment) provides:

> 4.     INTERNET SALES PROHIBITED
>
> > 4.1     Under no circumstance shall ASI [AmeriSales] market the Products in the Territory by means of the Internet. RWL [Rainworks] reserves all marketing rights in the Territory in respect to Internet sales of the Products, regardless of brand.

License Agreement at Clause 4 (copy attached hereto as Ex. 1).[8]   Despite this express prohibition, there is no dispute that Defendants AmeriSales and GPI sold GutterPiller products via the Internet through their website www.gutterpiller.com and did so since 2001. Duffy Depo. at 71:8-72:13; 226:14-226:17. Internet sales amounted to 40% of Defendants' business in 2006.

---

[8] The License Agreement defines "Products" as "gutter filters, gutter spades and gutter brushes." License Agreement at Clause 1 (copy attached hereto as Ex. 1).

Duffy Depo. at 276:10-276:17.  Even as of May 24, 2007, the date of Defendant Duffy's deposition, Defendants were still selling GutterPiller products via the Internet.  Duffy Depo. at 238:19-239:2; see also Duffy Depo. Exs. 21, 34-36 (showing examples of pages from Defendants' website where Defendants offer the GutterPiller products for sale).  Thus, there can be no dispute that Defendants violated Clause 4 of the License Agreement.

### c)    Defendants Failed to Pay Royalties on Actual Sales.

In addition to failing to pay the required minimum royalties for 2001 and 2002 and selling GutterPiller products online, Defendants have breached the license agreement by failing to pay royalties on numerous sales that they made.  As is noted above, Defendants paid only $245.51 in royalties for $7,0772.32 in GutterPiller sales.  Duffy Depo. at Ex. 6.  However, there were significant additional sales, including one sale alone in early 2002 for approximately $45,000.  Duffy Depo. at 257:3-258:1 at Duffy Ex. 49.  Indeed, Defendants own summary sales documents indicate that from January 1, 2002 to December 31, 2006, Defendants had $946,762.08 in GutterPiller sales.  Duffy Depo. 235:2-235:9 and Exs. 42-43 (testifying that when they assembled the exhibits, they "tried to do it just of GutterPiller" sales).[9]  Sales for 2002 totaled $66,761.19.  Id. at Ex.43.  There is no evidence in the record that Defendants paid any royalties on these sales.  Likewise, sales for January and February 2003, prior to Plaintiff's termination of the License Agreement, equaled $32,649.04 (Duffy Depo. Ex. 43) for which Defendants again paid no royalties.  Neither AmeriSales nor Gutterpiller paid Plaintiffs royalties for any of those sales.  Having failed to pay these royalties, GutterPiller and AmeriSales breached of the License Agreement and the First Amendment.

---

[9] Exhibits 42 and 43 are part of a single document but were inadvertently marked separately during the deposition with the latter portion of the document being marked as Ex. 42 and the beginning portion of the document being marked as Ex. 43.  Defendants never produced detailed sales records from 2001 for AmeriSales or GPI indicating that those records have been destroyed.  Duffy Depo. at 49:20-51:4.

### d) Defendants Sold GutterPiller Products After Termination.

Finally, Duffy Depo. Exs. 42 and 43 indicate that Defendants sold substantial amounts of GutterPiller products after Plaintiff Rainworks terminated the License Agreement and the First Amendment. Duffy Depo. Exs. 42-43. The License Agreement provides, "For one year after the term of this agreement, ASI [AmeriSales] shall not manufacture or market any product that competes with the Products; provided that the foregoing shall only apply if RWL [Rainworks] terminate[sic] this agreement pursuant to clause 12.3 [breach that remains uncured for 90 days after notice] or clause 12.4 [termination for nonpayment of minimum royalties after 90 days notice] ..." Duffy Depo. Ex. 2 at p.3, cl. 10.2. As is noted above, Plaintiff Rainworks terminated the License Agreement both for material breach pursuant to Clause 12.3, i.e., the nonpayment of royalties on sales and for Internet sales, and pursuant to Clause 12.4 for failure to pay the required minimum royalties set forth in the License Agreement. Plaintiff sent Defendants a written notice of termination on April 30, 2002. Herdman Depo. 161:24-162:10 and Ex. 25 (copy attached hereto as Ex. 3). The notice of termination stated that the termination was pursuant to Clauses 12.3 and 12.4 of the License Agreement and specifically referenced the one-year non-compete provision contained in Clause 10.2. Id. Thus, by continuing to sell GutterPiller products after the termination of the License Agreement, Defendants have also breached Clause 10.2 as a matter of law.

### 4. Defendants' Breach Damaged Plaintiff Rainworks.

Based upon the facts and material breaches outlined above, there can be no dispute that Defendants' breaches damaged Plaintiff Rainworks. At a minimum, Plaintiff Rainworks was entitled to receive the royalties for the pre-termination sales from 2002 and 2003 referenced above. Defendants never paid these royalties. This fact alone is satisfies this element and

compels a summary judgment on liability in Plaintiff Rainworks' favor for breach of contract on

Count 9 of Plaintiffs' Amended Complaint.[10]

**B.    Defendants AmeriSales, GPI, and Mill-Rose are Liable for Patent Infringement Under the Doctrine of Patent Marking Estoppel.**

After termination of the License Agreement, Defendants AmeriSales and GPI continued

to market and sell products covered by the '068 Patent in direct violation of Plaintiffs' patent

rights. See Duffy Depo. at 237:23-238:2 and Duffy Depo. Exs. 42-43. In addition, Defendant

Mill-Rose has continued to manufacture and ship the covered products. See Miller Depo. at

25:11-15, 115:21-116:8. Ever after the filing of this lawsuit, Defendants continued to show the

'068 Patent number on their packaging and promotional materials and continued to market the

products as "patented" and as being covered by Plaintiff Herdman's '068 Patent. See Miller

Depo. at 15:8-18:6; Duffy Depo. at 9:9-16:6; 68:10-70:9; 146:6-24; 161:12-162:20; 164:13-

168:14; 208:5-214:4; 273:22-276:3 and Duffy Depo. Exs. 1, 16, 21, 22, 34, 35, and 52.

Now, when Defendants are seeking to escape liability for patent infringement damages

and patent license royalties, the Defendants argue that the GutterPiller gutter filters are not

covered by the '068 Patent. See Miller Depo. at 20:12-25; Duffy Depo. at 8:8-9. Having

asserted that their product was covered by the '068 Patent from 2001 through the pendency of

this lawsuit into 2007, it would be inequitable to allow Defendants to now assert that those gutter

filter products are not covered by the '068 Patent for purposes of avoiding liability for patent

infringement. Accordingly, Defendants should be held liable for patent infringement under the

doctrine of patent marking estoppel.

---

[10] Specific calculations as to the amounts of pre- or post-termination sales or royalties, or as to the specific effective date of the termination itself, go to the extent of Plaintiff's harm and not to the fact of harm itself. The extent of harm is an issue of damages, which Plaintiff does not seek to resolve in this motion. Rather, Plaintiff presently seeks only a summary judgment on the issue of liability, for which undisputed proof of some damage suffices.

The general rule of the doctrine of patent marking estoppel is "that placing a patent number on a product will estop a manufacturer from denying that his product embodies the patent for purposes of liability for both patent infringement damages and patent license royalties." Boyd v. Schildkraut Giftware Corporation, 936 F.2d 76 (2nd Cir. 1991) (citing Piaget Novelty Co. v. Headley, 108 F. 870, 872-73 (2nd Cir. 1901); Canaan Products, Inc. v. Edward Don & Co., 273 F. Supp. 492, 502 (N.D. Ill. 1966), aff'd, 388 F.2d 540 (7th Cir. 1968); and Gridiron Steel Co. v. Jones & Laughlin Steel Corp., 361 F.2d 791, 797 (6th Cir. 1966). Courts applying the doctrine of marking estoppel take into consideration all aspects of a defendant's pertinent conduct in determining whether such conduct "makes it inequitable for him to take a position contrary to his prior statements or action." Acromed Corporation v. Sofamor Danek Group, Inc., 1996 U.S. Dist. LEXIS 22704 (N.D. Ohio 1996) (citing Boyd, 936 F.2d at 79). In Boyd, the court explained:

> The act of impermissibly placing a patent number on a product, **if limited in time and quantity**, does not inevitably have such adverse effects for the patentee or the consuming public as to bar the mismarker from establishing that his product does not use the patent. Though a patentee or a licensor normally will understandably have evidence only of sporadic instances of mismarking and need not identify widespread mismarking to raise a claim of estoppel, the accused mismarker should be able to defeat the claim by showing how inadvertent and limited the mismarking was. **Of course, deliberate mismarking of even a limited nature or inadvertent mismarking over a prolonged period of would justify estoppel.**

Boyd, 936 F.2d at 79 (emphasis added) (citing Gridiron Steel Co., 361 F.2d at 797; and Lathrop v. Rice & Adams Corp., 17 F. Supp. 622, 626 (W.D.N.Y. 1936)).

In this case, Defendants' used the '068 Patent number in conjunction with packaging and marketing materials over a significant period of time and in significant quantities. See Duffy Depo. at 9:9-16:6; 68:10-70:9; 142:6-12; 143:17-144:24; 146:6-24; 161:12-162:20; 164:13-168:14; 208:5-214:4; 273:22-276:3 and Exs. 1, 14, 15, 16, 21, 22, 34, 35, and 52. For example,

Exhibit 28 to the Duffy Deposition is a sell sheet used to sell GutterPiller gutter filters, at the bottom of that sell sheet, in bold letters, it says "Filter Patent Number 381068." Duffy Depo. at 184:15-186:21, Ex. 28. Mr. Duffy testified that he distributed "2,500, maybe 5,000" of these sell sheets. See Duffy Depo. at 186:11-15.

Similarly, at the same time the Defendants were marketing the GutterPuller gutter filters on the GutterPiller website as being patented, Defendants also marketed those gutter filters through thousands of flyers distributed at trade shows, which identified the GutterPiller gutter filter as "the only patented 'Spiral' Twisted wire gutter Protector System in the market today." Duffy Depo. at 9:9-14:13; 208:5-214:4 and Duffy Depo. Exs. 1, 34, and 35. Finally, when Defendants were soliciting quotes for packaging, they identified the gutter filter as covered by the '068 Patent. Depoisiton of John Powell at 33:11-43:10 and Powell Exs. B-2 and B-3.

In a similar case, the Southern District of New York estopped Thomas Plastics, Inc. ("TPI") from denying that it infringed the plaintiff's '569 patent. Elite Licensing, Inc. v. Thomas Plastics, Inc., 250 F. Supp. 2d 372 (S.D.N.Y 2003). The court considered all aspects of TPI's conduct, specifically noting that TPI marked all the products sold under its License with Elite Licensing with the '569 patent number; that TPI also included the '569 Patent number in its advertising literature; that TPI paid over $3,600,000 in royalties for the use of the '569 patent and enjoyed the benefits of its exclusivity by selling over $60,000,000 worth of licensed merchandisers over the four-year term of the license. Id. at 385. Thus, the Elite Licensing court found that "having asserted for years that the accused merchandisers are covered by the '569 Patent and reaped the benefits of that protection, it would be inequitable to allow TPI to now assert that those merchandisers are not covered by the '569 Patent." [11] Id. at 386.

---

[11] The first time TPI claimed that the merchandisers were not covered by the '569 Patent was *after* it learned that its license with Elite would not be renewed. *Elite*, 250 F. Supp. at 385-86.

Application of the doctrine of marking estoppel in this case also serves to protect the public interest by putting manufactures, in this instance Defendant Mill-Rose, on notice that "care should be taken in avoiding a misrepresentation to the public that goods are protected by a patent." Acromed, 1996 U.S. Dist. LEXIS 22704 at *17 (citing Crane Co. v. Aeroquip Corp., 364 F. Supp. 547, 551 (N.D. Ill. 1973), *aff'd in part, rev'd in part on other grounds*, 504 F.2d 1086 (7th Cir. 1974)). Thus, based upon the undisputed evidence in the record, and the public interest of avoiding misrepresentation with respect to patent protection on a particular product, this Court should enter a judgment in Plaintiffs' favor holding Defendants liable for patent infringement based on the doctrine of marking estoppel. Defendants marked, packaged, and sold the GutterPiller gutter filters as patented during the life of the License Agreement and for years thereafter. As such, Defendants are estopped from denying that the patent covers their product.

C. **Defendants are Liable for False Advertising, Deceptive Trade Practices, Unfair Competition, and False Marking (Counts 6, 7, 13, and 15).**

1. **Defendants AmeriSales, GPI, and Mill-Rose Have All Engaged in False Marking.**

Defendants AmeriSales, GPI, and Mill-Rose are all liable as a matter of law for false marking under 35 U.S.C. § 292. There is no dispute in this case that Defendants marked the GutterPiller product, packaging, and related advertising with the '068 Patent number. Defendants now, however, have asserted strenuously that the '068 Patent does not read on the GutterPiller products that Defendants sold arguing that the '068 Patent claims a circular brush with a shaved or flat side and Defendants' products are entirely round. See Duffy Defendant Answers to Interrogatory Nos. 8,9; Mill-Rose Supplemental Answers to Interrogatory Nos. 8,9. Thus, Defendants' own arguments advocate that their continued and repeated use of the '068 Patent number was false and inappropriate. 35 U.S.C. § 292 provides a private right of action for such conduct:

### § 292. False marking

(a) Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, offered for sale, or sold by such person within the United States, or imported by the person into the United States, the name or any imitation of the name of the patentee, the patent number, or the words "patent," "patentee," or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made, offered for sale, sold, or imported into the United States by or with the consent of the patentee; or

Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public; or

. . . .

Shall be fined not more than $ 500 for every such offense.

35 U.S.C. § 292. The Federal Circuit Court of Appeals has cited with approval four elements of a claim under Sec. 292: "(1) a marking importing that an object is patented (2) falsely affixed to (3) an unpatented article (4) with intent to deceive the public." Clontech Laboratories, Inc. v. Invitrogen Corp., 406 F.3d 1347, 1351 (Fed. Cir. 2005). The evidence in the record compels a finding in Plaintiffs' on each of these elements as a matter of law.

#### a) Defendants Marked the GutterPiller Products as "Patented" and as Protected by the '068 Patent Until Well Into 2007.

With respect to the first element, there is absolutely no dispute that Defendants AmeriSales, GPI, and Mill-Rose all marketed and sold the GutterPiller gutter filters as "patented" under the '068 Patent. Retail packaging and header cards used by the Defendants after the License Agreement terminated included specific references to the '068 Patent.[12] See

---

[12] The AmeriSales brochure for the GutterPiller filter, used during the life of the License Agreement, contains the same designation that the gutter filter is covered by the '068 Patent. Duffy Depo. at 184:15-186:15 and Duffy Ex. 28. In fact, Defendants AmeriSales and GPI used various media at trade shows to depict the gutter filter as being patented, including Exhibits 16, 17, and 18, which refer to "Pat. No. 381068." Duffy Depo. at 187:8-13 and Duffy Ex. 29. Document Nos. 002005 and 002007 in Duffy Deposition Exhibit 16 is a detail photograph of the "header card" used with the display box depicted in Duffy Deposition Exhibits 18 and 29. Document Nos. 002011-002012 in Duffy Deposition Exhibit 16 is a detail photograph of the UPC tag affixed to the GutterPiller filters (shown in place in Document No. 002006 in that same exhibit). The first page of Exhibit 16 is a cover letter from counsel for Defendant Mill-Rose authenticating the documents, which authentication Defendant Duffy confirmed in his deposition at pages 146-147 when he noted that immediately prior to his ... [continued on next page]

17

Powell Depo. at 8:23-10:2; 51:5-55:4 and Powell Exs. B5-B7; Miller Depo. at 22:2-9; 76:16-79:16; Duffy Depo. at 68:10-70:9; 143:17-144:24; 150:2-155:12 and Duffy Exs. 15-17. The GutterPiller web site and print media referred to product as "patented." Duffy Depo. at 9:9-14:13; 208:5-214:4 and Duffy Depo. Exs. 1, 34, and 35. Even Exhibit 22 to Mr. Duffy's deposition, which was allegedly a "correction" of Defendants' packaging, refers to "Patent 2609423," which is an expired patent for a totally unrelated product. Duffy Depo. at 164:13-165:14 and Duffy Ex.22.

### b) Defendants Admit That They Believe The GutterPiller Products Are Not Patented or Covered by the '068 Patent.

Under the second and third element of the false marking analysis, i.e., falsely affixing the "patent" designation to an unpatented article, each of the Defendants in this case have strenuously argued that the GutterPiller gutter filter is not patented. Each Defendant has sought a declaratory judgment from this Court that the GutterPiller gutter filter does not infringe the '068 Patent. See Mill-Rose Answer and Counterclaim (ECF 51) at Counterclaim II; AmeriSales Answer and Counterclaim (ECF 53) at Counterclaim II; GPI, Duffy, and Wilmington, Inc. Answer and Counterclaim (ECF 57) at Counterclaim II. Additionally, on or about July 16, 2003, Defendant Duffy and his companies obtained an opinion of counsel that the '068 Patent does not cover the GutterPiller gutter filter (copy authenticated as Duffy Depo. Ex. 59). Defendant Duffy shared this opinion with Defendant Mill-Rose. See Miller Depo. at 21:18-21:19. Despite this opinion, the defendants continued for four more years to market, package, mark, and advertise the product as being patented generally and covered by the '068 Patent in particular.[13]  Finally,

---

[continued from prior page]  ...deposition, he visited Defendant Mill-Rose's warehouse with the specific intention of removing and destroying the materials containing the offending patent numbers

[13] Through 2007, the packaging, advertising materials, and website advertised the product as being patented (even though defendants believed no patent covered the product).  Sometime in 2006, however, the Duffy Defendants did change the packaging for the GutterPiller gutter protector.  Duffy Depo. at 166:17-167:16.  Previously, the packaging stated that the GutterPiller gutter protector was covered by the '068 Patent.   [continued on next page]

and perhaps most tellingly, Defendant Duffy, individually and as representative of Defendants AmeriSales and GPI, testified in his deposition that he did not believe the GutterPiller gutter filter was patented. Duffy Depo. at 8:8-8:9; 14:9-14:13; 209:5-209:12; 213:23-214:9; 250:5-250:13. Likewise, Paul Miller, the Rule 30(b)(6) designee for Defendant Mill-Rose, testified that he believes that the GutterPiller gutter filter is not patented. Miller Depo. at 20:12-21:19; 51:17-51:22; 97:19-97:21. Thus, there is no evidence in the record that would support a conclusion that <u>any</u> of the Defendants believed that the GutterPiller product is patented and Defendants may not now argue otherwise to avoid a finding of false marking.

### c) Defendants Acted With Intent To Deceive As a Matter of Law.

With respect to the final element of the § 292 false marking analysis, the Federal Circuit has defined an "intent to deceive the public," as:

> [A] state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true. Intent to deceive, while subjective in nature, is established in law by objective criteria. Thus, "objective standards" control and "the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough drawing the inference that there was a fraudulent intent". . . . But in order to establish knowledge of falsity, the plaintiff must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked (i.e., covered by a patent). Absent such proof of lack of reasonable belief, no liability under the statute ensues.

Clontech Laboratories, Inc., 406 F.3d at 1352-53 (internal citations omitted); DP Wagner Mfg. Inc. v. Pro Patch Systems, Inc., 434 F.Supp.2d 445; 2006 U.S. Dist. LEXIS 28397 at *22 (S.D. Tx. 2006) (granting plaintiff's motion for partial summary judgment on a false marking claim under § 292 stating, "[T]he intent to deceive requirement is satisfied with evidence that the patent holder [defendant] marked a product with a patent without a good faith believe that the

---

[continued from prior page]  In 2006, the Duffy Defendants substituted the trademark registration number for the GutterPiller mark, 2609423, as the patent number – even though Mr. Duffy knew the difference between a trademark and patent.  Duffy Depo. at 138:3-5.

patent included a claim that covered the product.").

Based upon the preceding, the record lacks sufficient evidence to allow a reasonable jury to find that any of the Defendants reasonably believed that the articles were properly marked. Each of the Defendants has admitted that it did not believe the product was patented, yet there is no debate that each Defendant sold, distributed, or offered the product for sale as a "patented" item. Based upon the evidence in the record, this Court should enter a judgment in Plaintiffs' favor that Defendants falsely marked the GutterPiller product in violation of 35 U.S.C. § 292.

### 2. Plaintiffs Are Entitled to a Judgment as a Matter of Law That Defendants Engaged in False Advertising, Deceptive Trade Practices, and Unfair Competition.

For purposes of Counts 6, 7, and 13 of Plaintiffs' Amended Complaint, Plaintiffs can prove a claim for false advertising under the Lanham Act by establishing that: (1) the defendant has made false or misleading statements of fact concerning his product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff.[14] Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc., 270 F.3d 298, 322 (6th Cir. 2001); American Council of Cert. Podiatric Physicians v. Amer. Board of Podiatric Surgery, 185 F.3d 606, 613 (6th Cir. 1999). "[F]alse or misleading" statements can be either literally false, or can be literally true yet misleading or confusing. American Council of Cert. Podiatric Physicians, 185 F.3d at 614. Courts hold, even on motions for summary judgment, that advertising and promoting a product

---

[14] Federal courts applying Ohio law have held that the analysis of a claim brought under the Ohio Deceptive Trade Practices is the same as that of a claim brought under the Lanham Act, citing Hassell v. Chrysler Corp., 982 F. Supp. 515, 526 (S.D. Oh. 1997), aff'd mem., 135 F.3d 778 (Fed. Cir. 1998); Royal Appliance Mfg. Co. v. Hoover Co., 845 F. Supp. 469, 471 n.4 (N.D. Ohio 1994), and because the Ohio common law of unfair competition is not substantially dissimilar.

as "patented" or covered by a particular patent, when it is not, constitutes false advertising under the Lanham Act (15 U.S.C. 1125). See, e.g., M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., 439 F.3d 1335 (Fed. Cir. 2006); Regscan, Inc. v. Dean Mark Brewer, 2006 U.S. Dist. LEXIS 95539 (E.D. Pa. 2006); Icon Health & Fitness, Inc. v. The Nautilus Group, Inc., 2006 U.S. Dist. LEXIS 24153 (D. Utah 2006); FPC Corp. v. Uniplast, Inc., 964 F. Supp. 1212 (N.D. Ill. 1997).

### a) Defendants Made Statements About Their Products That They Argue and Believe Are Literally False.

Here, as is noted above, there is no dispute that Defendants advertised and marketed the GutterPiller gutter protector as "patented" or covered by "Pat. No. 381068," when they each believed that it was not. Accordingly, Defendants have admitted that their assertion is literally false or, at a minimum, are now estopped from claiming otherwise. With respect to the second element, that "the statement actually or tends to deceive a substantial portion of the intended audience," the Sixth Circuit Court of Appeals has stated, where statements are literally false, a violation may be established without evidence that the statements actually misled consumers. Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc., 326 F.3d 687, 699 (6th Cir. 2003) (quoting American Council of Certified Podiatric Physicians & Surgeons, 185 F.3d at 614); see also Johnson & Johnson, Inc. v. GAC Int'l, Inc., 862 F.2d 975, 977 (2d Cir. 1988); PPX Enters., Inc. v. Audiofidelity Enters., Inc., 818 F.2d 266, 272 (2nd Cir. 1987). Actual deception is presumed. American Council of Certified Podiatric Physicians & Surgeons, 185 F.3d at 614 (citing U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1040 (9th Cir. 1986)). "Literally false statements violate the Act; Plaintiff need only establish literal falsity to obtain relief, as actual consumer deception is presumed." Outdoor Technologies, Inc. v. Vinyl Visions, LLC, 2006 U.S. Dist. LEXIS 73337 *8 (S.D. Ohio 2006).

### b) Defendants' Admittedly False Statements Were Material.

The evidence in the record also shows that the statement that the GutterPiller product was "patented," when it was not, is material and will likely influence the deceived consumer's purchasing decisions, thereby satisfying the third element of Plaintiffs' false advertising claim. Mr. Miller testified on behalf of Mill-Rose that it would be "wrong" to ship a product in packaging that says the product is patented when it is not.[15] Miller Depo. at 23:21-24:25. Mill-Rose feels that it is important to put a patent number on its own patented product. Id. at 75:19-76:15. The same is true of Defendant Duffy (AmeriSales and GPI's president and 30(b)(6) witness) who is careful to mark an appropriate patent number on another product that he sells that he believes to be patented. Duffy Depo. at 215:18-215:22. Defendant Duffy even testified that the patent number was one of the "most important" pieces of information to convey to the consumer about the product. Id. at 144:3-144:13 (discussing the header card shown in Duffy Depo. Exs. 15, 16 (at Bates Nos. 16002005 and 002007)). Thus, each of the Defendants, through their respective representatives, admits and believes that correctly marking a product is important and material and is beneficial to them as manufacturers and sellers of patented items.

The United States Supreme Court and the Federal Circuit Court of Appeals, among others, also have made it clear that patent markings are material to customers and competitors' business and purchasing decisions. Squarely rejecting a defendant's argument "that there is no harm in marking products with patents even when those products do not fall within the bounds of

---

[15] False advertising and unfair competition allow for secondary liability. See, e.g., Transdermal Products, Inc. v. Performance Contracting Packaging, Inc., 943 F. Supp. 551 (E.D. Pa. 1996). Thus, liability for false advertising is appropriately extended to both director and contributory violators. Such an extension is particularly appropriate here because Defendant Mill-Rose continued to supply and package product to the Duffy Defendants without implementing any safeguarding or cross-checking measures (despite knowing the patentability of the GutterPiller gutter filter was an issue and despite believing it would be wrong to advertise and package the product as being patented when it was not). Miller Depo. at 23:21-24:25; 27:13-29:20; 56:7-57:5; 59:15-24). Instead, Defendant Mill-Rose opted to simply stick its head in the sand and make money even if that meant violating someone else's rights – after all, he believed he had passed liability onto Duffy. (Id. at 52:20-24; 60:9-19)

properly construed claims" (Clontech Laboratories, Inc., 406 F.3d at 1356), the Federal Circuit

noted:

> Moreover, we disagree with the proposition Invitrogen relies upon to support its argument, finding it unpersuasive and counter to the Supreme Court precedent of Wine Ry. Appliance Co. v. Enterprise Ry. Equipment Co., 297 U.S. 387, 397 (1936), Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 162 (1989), and Lear, Inc. v. Adkins, 395 U.S. 653 (1969). Together, Wine Ry. and Bonito Boats explain that Congress intended the public to rely on marking as "a ready means of discerning the status of intellectual property embodied in an article of manufacture or design." Bonito Boats, 498 U.S. at 162. Lear articulates federal patent policy, recognizing an "important public interest in permitting full and free competition in the use of ideas which are in reality a part of the public domain." 395 U.S. at 670. That interest is clearly injured by false marking because the act of false marking misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article.

Id. at 1356-57 (internal parallel citations omitted). As a result, a reasonable jury could only

conclude that Defendants' reference to the GutterPiller product as patented when it is not is

material and likely to influence purchasing decisions.

### c) Defendants Introduced the Advertisements Into Interstate Commerce.

Likewise, there is no doubt that Defendants introduced the advertisements into interstate

commerce and, as a result, there is no genuine issue of fact with respect to the fourth element of

Plaintiffs' false advertising claim. Defendants AmeriSales and GPI advertised and sold the

GutterPiller product via the Internet and held the product out as "patented" on its website at

www.gutterpiller.com. Duffy Depo. Ex. 34-35. The packaging for the GutterPiller product

referenced the '068 Patent and Defendants AmeriSales, GPI, and Mill-Rose each shipped

product in those boxes in interstate commerce. Duffy Depo. at 131:14-131:23; 136:3-136:6;

Miller Depo. at 7:18-9:19. Defendant Duffy, whose headquarters are in Illinois, testified that his

largest GutterPiller customers are in Ohio, Florida, and Wisconsin. Duffy Depo. at 46:22-46:25.

Defendant Duffy also testified that Defendants distributed 2,500 to 5,000 AmeriSales' "sell sheets" stating that the gutter filter is protected by the '068 Patent.  Duffy Depo. at 184:15-186:15 and Ex. 28.  Similarly, Defendant GPI distributed 5,000 to 6,000 copies of a brochure that represented that the GutterPiller product was patented.  Duffy Depo. at 11:21-12:18, 13:21-14:8 and Duffy Ex. 1 (page DUF-609).  Defendants distributed these brochures to new customers and trade show attendees.  Id. at 12:10-12:12.  Defendant Duffy even took packaging containing a patent reference with him when he appeared on the Home Shopping Network to promote the product in the fall of 2005.  Duffy Depo. at 103:25-105:1 (photographs of said packaging are included within Duffy Depo. Ex. 22, showing "Patent No." at pp. 2-3).  Thus, there can be no dispute that Defendants placed the false advertisements and packaging into interstate commerce.

### d)    Defendants Statements Harmed Plaintiff.

Finally, with respect to the fifth and final element of the false advertising analysis, a reasonable jury could only find that "there is some causal link between the challenged statements and harm to the plaintiff."  As Defendants admitted, and as judicially determined, consumer purchase decision are influenced by a product being advertised as patented.  Such false advertisement, therefore, necessarily drove sales to Defendants and away from Plaintiff Rainworks (who also advertises and sells via the Internet and is the only owner of a patented gutter filter).  Thus, by deliberately deceiving the public with a statement that the GutterPiller is the only patented system in the market (Duffy Depo. Ex. 1), when it is actually Plaintiffs' gutter filter which is the only patented system, and combined with specific advertising references to Plaintiff Herdman's patent, causation and harm are established because it is obvious (through simple verification and otherwise) that the only competitor with respect to the misrepresented GutterPiller gutter filter are Plaintiffs Herdman and Rainworks.  See Hutchinson v. Pfeil, 211 F.3d 515, 522 (10th Cir 2000), cert. denied, 531 U.S. 959 (2000).  No one else has standing to

assert otherwise. The false advertising of the GutterPiller as "patented" detracts from the value

of only Plaintiffs' product, which is patented, resulting in a presumption of harm to the patent

holder (the obvious competitor — Plaintiffs). C.f., Porous Media Corp. v. Pall Corp., 110 F.3d

1329, 1335 (8th Cir. 1997) (reaching a similar result in the context of a trademark).

Accordingly, the causal connection between the false advertising and Plaintiffs' injuries is also

established.

Based upon the foregoing, all of the evidence in the record weighs in favor of Plaintiffs

and they are entitled to a judgment in their favor on their claims of false advertising, deceptive

trade practices, and unfair competition against Defendants AmeriSales, GPI, and Mill-Rose.

## V.    CONCLUSION

Based upon the foregoing, this Court should grant a summary judgment in Plaintiffs'

favor as to liability on Counts 1, 6, 7, 9, 13, and 15 of Plaintiffs' Amended Complaint. The

undisputed facts in the record make clear that Defendants breached the License Agreement and

the First Amendment by failing to pay royalties on authorized sales, failing to pay required

minimum royalties, selling covered products via the Internet, and selling covered products after

the termination of the License Agreement during the non-competition period.

This Court should also find that Defendants are liable for patent infringement as a matter

of law. Having marked the accused GutterPiller products and their related packaging and

advertising materials with the '086 Patent number for many years, Defendants are now estopped

from denying that the '068 Patent reads on their products. Finally, if Defendants are correct in

their assertion that their products do not infringe the '068 Patent, Defendants are liable under

state and federal law for false advertising, deceptive trade practices, unfair competition, and false

marking as a result of their consistent and ongoing advertising and marking of the products as

{H1087509.4 }                                           25

"patented" and protected by the '068 Patent. Accordingly, this Court should grant Plaintiffs'

Joint Motion for Partial Summary Judgment in its entirety.

Respectfully submitted,

/s/ H. Alan Rothenbuecher
H. Alan Rothenbuecher (0041883)
  hrothenbuecher@szd.com
T. Earl LeVere (0063515)
  elevere@szd.com
Schottenstein Zox & Dunn Co., LPA
US Bank Centre at Playhouse Square
1350 Euclid Ave., Suite 1400
Cleveland, Ohio 44115

*Attorneys for Plaintiffs Rainworks Limited
and Michael Laurence Herdman*

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2007, a copy of the foregoing Plaintiffs' Joint Motion for Partial Summary Judgment was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ H. Alan Rothenbuecher
H. Alan Rothenbuecher