IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAINWORKS LIMITED, et al., | ) | CASE NO. 1:06 CV 1549 |
| | ) | |
| Plaintiffs | ) | JUDGE BOYKO |
| | ) | MAGISTRATE JUDGE PERELMAN |
| vs. | ) | |
| | ) | |
| THE MILL-ROSE COMPANY, et al., | ) | **DEFENDANT GUTTERPILLER,** |
| | ) | **INC.'S MEMORANDUM IN** |
| Defendants | ) | **OPPOSITION TO MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |

**I.   SUMMARY ARGUMENT**

Plaintiffs' Motion for Partial Summary Judgment must be denied as there are a myriad of factual and legal issues which prevent it from being granted. First, Gutterpiller was not a party to the License Agreement or the First Amendment to License Agreement between Rainworks and Amerisales. Therefore, Gutterpiller cannot be held liable for breach of the License Agreement. Second, Plaintiffs' patent marking claim fails because Plaintiffs' patent is invalid for failing to satisfy the requirements of 35 U.S.C. §171. Moreover, the marking estoppel is of questionable legal viability at this point and there are material issues of fact that prevent it from being applied in this case. Third, Plaintiffs' false marking claim is not ripe for summary judgment because there is a genuine issue of material fact as to Gutterpiller's lack of intent. Fourth, with respect to Plaintiffs' claims for false advertising and deceptive trade practices, Plaintiffs lack standing to prosecute those claims as Plaintiffs are not, and have not been, "in competition" with Gutterpiller.

## II. PROCEDURAL LAW

Federal Rule of Civil Procedure 56(c) provides, in pertinent part, as follows:

> . . . The judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

While considering Plaintiff's Motion, all justifiable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356 (1986). Any assessments of credibility and all choices between available inferences are matters to be left for the jury, not matters for the court to be decided on a Motion for Summary Judgment. *First Sec. Bank of New Mexico, N.A. v. Pan American Bank*, 215 F.3d 1147 (10th Cir. 2000). In fact, there intent is a substantive element of a cause of action, courts should not draw factual inferences in favor of the party moving for summary judgment. *Ness v. Marshall*, 660 F.2d 517 (3rd Cir. 1981).

Finally, even if the court believes that the standards of Federal Rules of Civil Procedure 56 have been met, it may deny a Motion for Summary Judgment if it believes that 'the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513 (1986).

## III. ARGUMENT

**A. Gutterpiller, Inc. never signed or entered into a contract with Plaintiffs. Therefore, Plaintiffs' Motion For Summary Judgment With Respect To Count IX Of Plaintiffs' Amended Complaint Must Be Denied.**

While the section of Plaintiffs' Memorandum concerning its breach of contract claim against Gutterpiller is long, it is short on substance and fails at all to consider a key element of its

2

claim. It is axiomatic that in order for Gutterpiller to be contractually liable to either of the Plaintiffs, it must have entered into a contract with one of the Plaintiffs.

Rainworks claims it entered into a License Agreement with Defendant Amerisales, Inc. ("Amerisales") (See Duffy Deposition Exhibit 2). The License Agreement, if it was signed at all by any of the Defendants, was signed by Amerisales. Amerisales is a completely separate Illinois corporation from Gutterpiller. (See Paragraphs 4 and 5 of Plaintiffs' Amended Complaint). Moreover, Defendant Thomas Duffy ("Duffy") testified that he did not commingle the assets of Amerisales and Gutterpiller. (See p. 39 of Duffy Deposition). In addition, it was Amerisales, not Gutterpiller which signed the First Amendment to the License Agreement. (See Duffy Deposition Exhibit 3).

Moreover, while Plaintiffs have made a claim that Gutterpiller and Duffy are the alter ego of Amerisales, that claim is the subject of Gutterpiller's Motion for Partial Summary Judgment on Count XIV of Plaintiffs' Amended Complaint. Furthermore, Plaintiffs have not even moved for summary judgment on that claim.

Therefore, under no circumstances could this Court find that a jury that could only conclude that Gutterpiller should be held liable for breach of a contract (the Licensing Agreement) that it never even signed. Plaintiffs' Motion for Summary Judgment in Count IX of its Amended Complaint as it relates to Gutterpiller must be overruled.

> **B.** **The Doctrine Of Patent Marking Estoppel Is Inapplicable For Both Legal And Factual Plaintiffs' Claims. Therefore, Plaintiffs' Motion For Summary Judgment With Respect To Count I Of Plaintiffs' Amended Complaint Should Be Denied.**
>
> > **1.** **As Plaintiffs' Patent Is Invalid For Failure To Satisfy The Requirements Of 35 U.S.C. §171, Plaintiffs' Patent By Estoppel Argument Is Inapplicable And Irrelevant.**

Even if this Court should find that there are facts here to support Plaintiffs' estoppel by marking argument, that argument has no merit because it is not applicable when the patent itself

3

is invalid. Simply stated, a non-infringing product cannot be converted into an infringing product when the patent itself is invalid. (See *Elite Licensing, Inc. v. Thomas Plastics, Inc.*, 250 F.Supp.2d 372 (S.D.N.Y. 2003) where the court held by marking by estoppel applied but still permitted the Defendant to argue that the patent was invalid and unenforceable because it was procured through inequitable conduct or fraud.)

It has been held that a party may be estopped from denying that his product is covered by the scope of the patent. See *Boyd v. Schildkrut Giftware Corporation*, 936 F.2d 76 (2d. Cir. 1991); *Piaget Novelty Co. v. Headley*, 108 at Fed. 870, 872-73 (2d. Cir. 1901). If the Court accepts the Plaintiffs' argument, however, that Defendants are barred from arguing that the Gutterpiller product is not within the scope of the patent, Defendants are still not precluded from arguing that the Plaintiffs' patent as a matter of law is invalid. *Elite Licensing*, *supra*.

In this case, the patent is invalid for being merely a functional design. In *Towers Control Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 238 (Fed. Cir. 1986), the Federal Circuit reconfirmed that patented designs which are primarily functional rather than ornamental are invalid. The requirement that a patented design have ornamental features as set forth in 35 U.S.C. §171 which provides:

> Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefore, subject to the conditions of this title. The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.

The Court of Custom and Patent Appeals discussed the need for ornamental features in a design patent as follows:

> Many well-constructed articles of manufacture whose configurations are dictated solely by function are pleasing to look upon . . . but it has long been settled that when a configuration is a result of functional considerations only, the resulting design is not patentable as an ornamental design for the simply reason that it is not "ornamental" . . . was not created for purpose of ornamenting. [citations omitted].

4

In re *Carletti*, 328 F.2d 1020, 1022 (Fed. Cir. 1964).

The Federal Circuit in *L.A. Gear, Inc.* stated that "the design of a useful article is deemed to be functional when the appearance of the claimed design is dictated by the use or purpose of the article and that 'if the particular design is essential to the use of the article, it cannot be the subject of a design patent'." *L.A. Gear, Inc. v. Thom McAn Shoes*, 988 F.2d 1117, 1123 (Fed. Cir. 1993).

In addition, the Federal Circuit in *Berry Sterling Corp.* suggested a number of appropriate considerations for determining if a design is primarily functional or ornamental, namely (1) the existence of alternative designs; (2) whether the protected design represents the best design; (3) whether alternative designs would adversely affect the utility of the specified article; (4) whether there are any concomitant utility patents; (5) whether the advertising touts particular features of the design as having specific utilities; and (6) whether there are any elements in the design or overall appearance clearly not dictated by function. *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1456 (Fed. Cir. 1997).

In viewing the overall design of the patent in its entirety, it is obvious that the design Gutterfilter of the patent is dictated by its utilitarian purpose, namely, to properly fit in a gutter so as to filter out debris from rainwater collected in a roof gutter and to prevent debris from entering the gutter. The only distinguishing aspect of the design of the patent from the prior art is the trimmed bristle or flat of the brush. The design of the gutterfilter in the patent lacks any other novel feature or element whose overall appearance is not purely dictated by function.

The entire rationale for trimming the gutterfilter has nothing to do with the overall ornamentality of the gutterfilter. The trimming of the gutterfilter is used to enable the gutterfilter to properly sit in a roof gutter. Both Plaintiffs' description of the Hedgehog Gutterfilter to third parties and Plaintiffs' own product literature for the Hedgehog Gutterfilter described the

5

advantages for trimming the bristles on the gutterfilter. For example, Plaintiffs' letter dated March 12, 1997 to Mill-Rose (<u>See</u> Herdman deposition Exhibit 7) characterized the "Hedgehog" Gutterfilter as similar in appearance to a "crudely made lop-sided bottle brush." Plaintiffs further informed Mill-Rose that the "rationale behind the 'lop-sided', or . . . 'crude-cut' bristle profile is . . . critical to the fit and performance of the product." Therefore, when Plaintiffs first introduced the Hedgehog Gutterfilter to Mill-Rose, the stated reasons for the trimming of the gutterfilter were only utilitarian, not ornamental. In addition, Plaintiffs' advertising literature repeats these utilitarian or functional features of the Gutterpiller. (<u>See</u> Herdman deposition Exhibits 1, Exhibit 1, and Exhibits C-G filed with Defendant Mill-Rose's Motion for Summary Judgment).

Plaintiffs' product literature for the product also includes statements about the utilitarian features of the trimmed gutter brush namely, (a) the "unique patented bristle profile" of the Hedgehog ensures that the Hedgehog fits "snugly against the gutter floor" so as to filter the water prior to flowing into the gutter downpipes and/or prevent leaves or other unwanted objects in the gutter and (b) the "crude-cut base also lowers the overall height of the filter sufficiently for the upper bristles to anchor the Hedgehog under the roofing overhang." (<u>See</u> Exhibit E filed in support of Defendant Mill-Rose's Motion for Summary Judgment). Indeed, the Hedgehog gutterfilter literature plainly states that "without the crude-cut base, the height/width ratio would be lost, as would the snug fit against the gutter floor which contributes so much to the Hedgehog's efficiency." (<u>See</u> Exhibit E filed in support of Defendant Mill-Rose's Motion for Summary Judgment).

Even during this action, Plaintiffs have consistently referred to the functional aspects of the gutterfilter. For example, in Paragraph 12 of the Amended Complaint, Plaintiffs assert that Hedgehog's ". . . unique features include lateral trimming, which enables brush makers to custom

6

make filters to fit virtually any kind of gutter profile, in which was something that had not been incorporated in twisted-in-wire brushware before the Hedgehog™."

In response to Interrogatory No. 1 of Plaintiffs' Responses to The Mill-Rose Company's First Set of Interrogatories (Ex. J to Defendant Mill-Rose's Motion for Summary Judgment), Plaintiffs stated:

> Lateral trimming and method of manufacturing. To promote a better fit of the filter to the profile of the gutter, to increase bristle density and filter performance, and to decrease freight charges, the filter is trimmed using horizontally mounted scissor cutters mounted behind a cutting comb (which prevents the angled bristles from slipping away from the cutter blades). Depending upon the profile of the gutter, one or two sides of the filter is trimmed to promote a better fit. Trimming can also be done to accommodate the primary purpose of the filter (i.e., screening debris or keeping out rodents and birds) . . .

Plaintiffs also stated in response to Interrogatory No. 3:

> The unique features disclosed in U.S. Patent No. DES.381,068 are the bristles, the purpose of the bristles, the modular concept, and how the shape of the filter can be modified through lateral trimming so as to suit the profile of the gutter.

With respect to Interrogatory No. 11:

> Depending upon the gutter profile, Hedgehog gutterfilters may be laterally trimmed at two different locations.

Plaintiffs' admissions alone in this action state quite clearly that the shape of the product is entirely dictated by the purpose to permit the gutterfilter to fit properly in a gutter so that the gutterfilter can efficiently filter out debris when positioned in the gutter. Plaintiffs' product brochures and literature affirm the utilitarian features of the trimmed bristles on the gutterfilter. All the representations by Plaintiffs make it clear that their gutterfilter design defined in the patent is optimal for filtering rainwater in the gutter and for properly positioning the gutterfilter in a gutter. Thus, not trimming the bristles would adversely affect the utility of the gutterfilter.

7

Therefore, because the gutterfilter design of the patent design patent is entirely a functional configuration for a brush but is to be positioned in a roof gutter, the '06 patent does not meet the requirements of 35 U.S.C. §171 so that Defendants, as a matter of law, are entitled to summary judgment on the invalidity of the patent.

    **2.    The Doctrine Of Marking Estoppel Is Of Questionable Legal Viability And It Cannot Be Applied Where The Marking Was Done Accidentally And Gutterpiller Never Received Any Actual Protection From Competition Or Any Benefits From The Patent**

The concept of the Doctrine of Marking Estoppel is of questionable legal import at this time. Most courts when attempting to apply the Doctrine, and most parties when arguing in favor of the Doctrine, have relied on two cases. Those cases are *Boyd v. Schildkrut Giftware Corp.*, 936 F.2d 76 (2d. Cir.) (cert. denied 502 U.S. 1991) and *Crane Co. v. Aeroquip Corp.*, 364 F.Supp. 547, 560 (N.D. Ill. 1973), affirmed in part, reversed in part, 504 F.2d 1086 (7th Cir. 1974).

In *Crane*, *supra*, the District Court found that there was no literal infringement but held that marking estoppel applied. The Seventh Circuit, however, reversed the District Court on the issue of literal infringement and thus affirmed the judgment on the ground other than marking estoppel. 504 F.2d. at 1093. In *Boyd*, *supra*, the Court found that marking estoppel was not appropriate where mismarking was accidental and was corrected when noticed. The *Boyd* court explained:

> We think that marking estoppel, like other varieties of estoppel, should arise only when a consideration of all aspects of a defendant's pertinent conduct makes it inequitable for him to take the position contrary to his prior statements or actions. The act of impermissibly placing a patent number on a product, if limited in time and quantity, does not inevitably have such adverse effects for the patentee or the consuming public as to bar the mismarker from establishing that his product does not use the patent. . . . The accused mismarker should be able to defeat the claim by showing how inadvertent or limited the mismarking was. Of course, deliberate mismarking of even a limited nature or the inadvertent mismarking over a prolonged period would justify an estoppel.

8

In 936 F.2d at 79.

Moreover, it is undisputed that a party not be liable for patent mismarking absent a showing that had the specific intent to deceive the public as to the origin or sponsorship of the products. See *Arcadia Mach. & Tool, Inc. v. Sturm, Roger & Co.*, 786 F.2d 1124, 1125 (Fed. Cir. 1986); *International NVTL Dynamics, Inc. v. Fraser*, 647 F.2d 77, 79 (9th Cir. 1981); *Accent Designs, Inc. v. Jan Julie Designs, Inc.*, 827 F.Supp. 957, 968-970 (S.D.N.Y. 1993).

In this case, Defendant Duffy has testified consistently that he had no intent to mislead the public and that number was apparently placed upon "some" packaging by mistake. Moreover, there are reasonable and objective facts which could cause a reasonable person to conclude that the marking mistakes were not intentional. Therefore, Plaintiffs cannot prove at this procedural stage an undisputed specific intent to deceive.

A reasoned review of the evidence makes it clear that factual issues exist concerning whether there was ever any intent to mislead the public or it was a simple mistake. First, it is undisputed that after Gutterpiller began marketing the product, it obtained opinion from patent counsel that its product did not infringe upon the patent. In correspondence dated July 16, 2003 from Daniel M. Gurfinkel of the Welsh & Katz Ltd. law firm in Chicago, Defendant Duffy was informed of that firm's evaluation that his product did not infringe upon Plaintiffs' patent. (See Duffy deposition exhibit 59). Having received that opinion, it would have made no sense for Gutterpiller to have intentionally mislabeled the product.

As noted earlier, Defendant Duffy has testified consistently that certain labels were marked with a patent number in error. Duffy testified as follows in his deposition:

       Q.     Do you ever put a marking of patent on any of your packages?

       A.     Yes, and it was in error.

       Q.     How so done by error?

9

   A. We -- actually was supposed to be our registration number for the registration of our name and it was not on as a patent number and not the registration number.

(Duffy depo. p. 7).

 Duffy further testified at his deposition as follows:

   Q. How about the packaging, putting the patent number on those packages that had the patent number on it? Why did you choose that?

   A. I thought it was a registration number. Misidentified.

(Duffy depo. p. 128).

   Q. You said there was a mistake on the four-pack box? Right?

   A. It was supposed to say registration number and it showed I think a patent number. There was a registration number for our trademark.

(Duffy depo. p. 37).

 Furthermore, Duffy testified about his efforts to correct the problem. Pgs. 144-145 of his deposition, Duffy testified concerning blacking out the patent number on header cards so it would not be seen by the general public upon shipment. Moreover, Duffy testified that much of his product is delivered in plain brown boxes that do not contain any reference to a patent. (See Duffy depo. pp. 170, 183-184).

 In short, there is evidence here that the patent marking was an honest mistake. This court cannot evaluate that testimony without evaluating the credibility of Duffy himself. Therefore, it would be incorrect for the Court to grant Plaintiffs' Motion for Summary Judgment on Count I of their Amended Complaint.

    **C.**    **Plaintiffs' Motion For Partial Summary Judgment Under The Theories Of False Advertising, Deceptive Trade Practices, Unfair Trade Practices And False Marking Under Counts VI, VII, XIII And XV Should Be Denied As There Are Number Of Factual Issues And Plaintiffs Have No Competitive Injury As They Did Not Do Business In America During The Time Period At Issue In This Lawsuit.**

          **1.**    **With Regard To Plaintiffs' False Marking Claim, Plaintiffs' Motion For Summary Judgment As To Count XIII Of Plaintiffs' Amended Complaint Must Be Overruled Because There Is A Genuine Issue Of Material Fact As To Gutterpiller's Lack Of Intent.**

United States Code Annotated 35 U.S.C. §292 provides, in pertinent part:

**§ 292.  False marking**

(a)  Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, offered for sale, or sold by such person within the United States, or imported by the person into the United States, the name or any imitation of the name of the patentee, the patent number, or the words "patent," "patentee," or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made, offered for sale, sold, or imported into the United States by or with the consent of the patentee; or

Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public; or

. . .

Shall be fined not more than $500 for every such offense.

The patent marking statute is not, however, a statute of strict liability, but instead requires some proof that articles were mismarked for purposes of deceiving the public. *London v. Everett H. Dunbar Corporation*, 170 F. 506 (1 Cir. 1910); *Brose v. Sears, Roebuck and Co.*, 455 F.2d 763, 768-69 (5th Cir. 1972); *Arcadia Machine Tool, Inc. v. Sturm, Ruger & Co., Inc.*, 786 F.2d 1124, 1125 (Fed. Cir. 1986); *Clontech Laboratories, Inc. v. Invitrogen Corporation,* 406 F.3d 1347 (Fed. Cir. 2005).  While a court may use objective standards to evaluate the intent of the

11

purveyor of information, *Clontech supra*, the question of whether conduct arises to the level of statutory deception is a question of fact. *Clontech*, *supra*; *KangaRoos U.S.A. Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1573 (Fed. Cir. 1985).

An objective analysis of the facts reveal obvious material issues of fact that present this court from finding that there are no genuine issues of material facts. Therefore, summary judgment would be improper at this time.

First, Gutterpiller, near the time it began to market its product, obtained an opinion from attorney Dan Gurfinkel at the Chicago law firm of Welsh & Katz, Ltd. which confirmed that the Gutterpiller product did not infringe on Plaintiffs' patent. (See correspondence from Dan Gurfinkel dated July 16, 2003 attached to the Duffy Deposition as Exhibit 59.) Therefore, it would make no sense for Gutterpiller to spend the time and considerable expense to obtain such a costly report and then intentionally mismark a product.

Second, Duffy testified that certain boxes were manufactured in Germany at a time when Amerisales was attempting to finalize its oral arrangement with Rainworks. No doubt, as Duffy testified, some of their boxes contained a patent number issued while Amerisales and Rainworks were attempting to work cooperatively with each other. (See Duffy testimony at Duffy depo. p. 123).

Third, Duffy admitted that he got the patent number and the trademark registration number confused. (See Duffy depo. p. 37 and p. 128). In short, the patent number was placed on certain boxes instead of the trademark registration number. In 2006, Gutterpiller began using the trademark registration number, 2609423, instead of the patent number. (See Duffy depo. p. 138). Gutterpiller is a small company with only a few employees. Duffy wore, and wears, many hats. His confusion, due to trying to be salesman and manager all at the same time, should not be misunderstood for an intent to mislead.

Fourth, there was very little evidence of what incorrectly marked boxes the general public actually saw. Duffy Testified that much of Gutterpiller's product was delivered in plain brown boxes that did not contain a reference to any patent. (See Duffy depo. pp. 170, 183-184.

Fifth, Plaintiffs have offered no evidence that any members of the buying public were actually deceived by any of Gutterpiller's marketing. Plaintiffs offer no evidence that anybody actually purchased the Gutterpiller product because they thought (1) that it was patented or (2) that the claim that it was patented was in any way material to their purchasing decision.

In short, there is conflicting evidence whether Gutterpiller intentionally attempted to mislead the purchasing public. The only way this conflict can be resolved is by the trier of fact listening to Duffy testimony in order to evaluate the credibility of his testimony. Therefore, Plaintiffs' Motion for Partial Summary Judgment on Count VI of the Amended Complaint must be denied.

> **2.** **With Regard To Plaintiffs' Claim For False Advertising And Deceptive Trade Practices, Plaintiffs Lack Standing To Prosecute This Claim As They Were Not In Competition With Gutterpiller**

In order to successfully prosecute this claim, the Plaintiffs must prove that: (1) the Defendant has made a false or misleading statement of fact concerning the product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the Plaintiffs. *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 322 (6th Cir. 2001).[1]

---

[1] Courts have held that the analysis of a claim under the Ohio Deceptive Trade Practices Act is the same for a claim brought under the Lanham Act. *Royal Appliance Mfg. Co. v. Hoover Co.*, 845 F.Supp. F.Supp. 469, 471 (N.D. OH 1994).

13

The purpose of the Lanham Act is to limit and prevent "anti-competitive conduct in a commercial context." See *Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221 (3rd. Circ. 1998). In fact, the congressionally-stated purpose of the Lanham Act evinces a congressional "intent to limit standing to a narrow class of potential plaintiffs possessing interests, the protection of which furthers" that congressionally stated purpose. *Conte Bros.*, 165 F.3d at 229. Therefore, for a false advertising claim designed to prevent unfair competition under the Lanham Act, the plaintiff must be a competitor of the defendant and allege a competitive injury to have standing to prosecute such a lawsuit. *Hutchinson v. Pfeil*, 211 F.3d 515 (10th Cir. 2000); *Stansfield v. Osborne Industries, Inc.*, 52 F.3d 867 (10th Cir. 1995).[2]

A plaintiff suing to enjoin conduct that violates the Lanham Act need not prove specific damage. In contrast, however, courts require a heightened level of proof in order to recover money damages. See, e.g. *Black Hills Jewelry Mfg. v. Gold Rush, Inc.*, 633 F.2d 746, 753 N.7 (8th Cir. 1980). In a suit for money damages where a defendant misrepresented its own product but did not specifically target a competing product, Plaintiff may be one of many competitors and without proof of causation might receive a windfall unrelated to its own damage. See, *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197 (9th Cir. 1989) where the court overturned a damage verdict because Plaintiff presented no evidence of actual injury from the purported deception.

In this case, the Plaintiffs do not have standing to prosecute a claim for false advertising or deceptive trade practices under the Lanham Act. Plaintiffs sell their product in Australia and New Zealand only. Therefore, Plaintiffs do not, and have not, competed with Gutterpiller. In

---

[2] The case of *Hutchinson v. Pfeil*, 211 F.3d 515 (10th Cir. 2000) cited by Plaintiffs does not support Plaintiffs' argument. In that case, the court held that the Plaintiff had no standing because he had "no product in competition with the Pfeils' painting." *Id*. at 522.

14

fact, Plaintiffs have not marketed or sold their product in the United States since 2000 other than when they had an arrangement with Amerisales.

Herdman testified, as follows, at his deposition:

> Q. All right. What countries has Rainworks sold products in since the year 2000 excluding Mr. Duffy's product?
>
> A. Only Australia. Well Australia was, didn't actually sell products into Australia because the product was manufactured in Australia. We, we sent over some gutter tools, but the actual Hedgehog product was actually manufactured in Australia.
>
> Q. You, Rainworks has not sold any products in Europe since 2000?
>
> A. No.

(Duffy depo. p. 41).

Herdman also specifically testified that Rainworks was not selling its gutter filter in America. Herdman testified as follows:

> Q. Well, is Rainworks selling it in the United States?
>
> A. No. Sorry.

Herdman further testified:

> Q. Is it fair to say that other than with Mr. Duffy and his company, Rainworks has not received income from sales of your patented gutter filter in the United States?
>
> A. Correct.

(Herdman depo. p. 44).

Finally, Herdman testified unequivocally that no one in America has ever used his website to purchase his product. (Herdman depo. p. 98). In fact, it would make no sense for an American to purchase product using the website because of the high costs involved. (Herdman depo. p. 98).

In short, the Plaintiffs are not in competition with Gutterpiller. The Plaintiffs have not, and are not, "in competition" with Gutterpiller for sales in the United States market. Plaintiffs cannot point to any consumer confusion or lost sales of any kind or type because Plaintiffs have not marketed their product in the United States. Plaintiff cannot point to an actual injury as a result of any purported deception. The Lanham Act was designed to protect parties from unfair competition. Plaintiffs, however, do not have a "competitive injury" because they are not in competition with Gutterpiller. Therefore, Plaintiffs do not have standing to prosecute a false advertising or deceptive trade practices claim against Gutterpiller.

**IV.   CONCLUSION**

For the foregoing reasons, Defendants, Gutterpiller, Inc. and Thomas J. Duffy request that this Court deny Plaintiffs' Motion For Partial Summary Judgment.

OF COUNSEL:

McCARTHY, LEBIT, CRYSTAL    */s/ Charles P. Royer*
  & LIFFMAN CO., L.P.A.          CHARLES P. ROYER (0037104)
                                 101 W. Prospect Avenue, Suite 1800
                                 Cleveland, OH  44115
                                 (216) 696-1422 *phone*
                                 (216) 696-1210 *facsimile*
                                 cpr@mccarthylebit.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2008, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

          */s/ Charles P. Royer*
          CHARLES P. ROYER (0037104)

N:\clients\RockfordMutual\GutterPiller\Pleadings\MemoInOpposition toMtnforSJ.doc