IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Rainworks Limited, et al. | ) CASE NO. 1:06-CV-1549 |
| Plaintiffs, | ) JUDGE BOYKO |
| v. | ) |
| The Mill-Rose Company, et al. | ) |
| Defendants. | ) |

**PLAINTIFFS' JOINT MEMORANDUM IN OPPOSITION TO
AMERISALES INC.'S MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Defendant AmeriSales, Inc. ("AmeriSales") seeks a summary judgment in its favor as to Plaintiffs' claims for patent infringement (Count 1), breach of the License Agreement (Count 9), tortious interference with prospective economic advantage (Count 10), tortious interference with the Confidential Disclosure Agreement between Plaintiffs and The Mill-Rose Company ("Mill-Rose") (Count 11), false marking (Count 13), and unfair competition (Count 15). AmeriSales contends it is entitled to summary judgment for the sole reason that Plaintiffs cannot show they have suffered any damages attributable to AmeriSales, rendering the claims against AmeriSales invalid as to it. AmeriSales is wrong for several reasons.

First, Plaintiffs have alleged damages specifically attributable to AmeriSales, rendering AmeriSales' sole basis for summary judgment invalid. Plaintiffs also have shown (via Plaintiffs' opposition to the motion for partial summary judgment of Defendants Duffy, Wilmington International, Inc. ("Wilmington"), GutterPiller, Inc. ("GPI") (collectively "the Duffy Defendants")), that there is sufficient evidence to conclude that the Defendant AmeriSales is the

{C0023117 1 }

alter ego of the Duffy Defendants and, as such, are liable for each other's wrongful conduct alleged in Plaintiffs' Amended Complaint.

Second, there is ample evidence to support finding that AmeriSales engaged in the conduct of which Plaintiffs complain. Specifically, as is noted in Plaintiffs' own motion for partial summary judgment, the record contains evidence that AmeriSales infringed U.S. Patent No. Des. 381,068 ("the '068 Patent"). Likewise, with respect to Count 9 of Plaintiffs' Amended Complaint, for all the reasons set forth in Plaintiffs' motion for partial summary judgment, there is sufficient evidence to support a finding that AmeriSales breached the License Agreement with Plaintiff Rainworks Limited ("Rainworks").

With respect to Counts 10 and 11, there is also sufficient evidence to support a finding that AmeriSales tortiously interfered both with Rainworks' prospective business relationship with a substitute distributor and also with the Confidential Disclosure Agreement executed between Plaintiff Rainworks and Defendant The Mill-Rose Company ("Mill-Rose"). On Counts 13 and 15, as is also argued in Plaintiffs' motion for partial summary judgment, there is sufficient evidence for a reasonable jury to conclude that AmeriSales engaged in false marking and unfair competition by selling a product as "patented" and covered by Plaintiff Herdman's '068 Patent when AmeriSales now asserts the product was not.

As a result, AmeriSales/ motion should be denied – AmeriSales has failed to satisfy its initial burden of presenting evidence showing that it is entitled to a summary judgment. AmeriSales identifies no specific facts or portions of the record that indicate that Plaintiffs cannot sustain their burden of proof on any element of Counts 1, 9, 10, 11, 13, or 15.

## II.  STANDARD OF REVIEW

The standard of review for a motion for summary judgment is well-known. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions

on file, together, with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Often overlooked (and overlooked by AmeriSales here), however, is the requirement that a Rule 56 movant first "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes *demonstrate the absence* of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (emphasis added) (quoting Fed. R. Civ. Proc. 56(c)). Thus, a defendant moving for summary judgment "first carries the burden of proving that there is no genuine issue of material fact." Connection Distrib. Co. v. Keisler, 505 F.3d 545, 551 (6th Cir. 2007) (emphasis added).

Contrary to AmeriSales' practice here, "it is never enough simply to state that the non-moving party cannot meet its burden at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); see also Handeen v. Lemaire, 112 F.3d 1339, 1346 (8th Cir. 1997) ("Even when the non-movant bears the burden of proof at trial, simply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case" (citations omitted)). Accordingly, the party "opposing summary judgment does not have the burden of showing that there is a genuine issue for trial *until* the movant has produced evidentiary material showing that there is no genuine issue as to any material fact." 2361 State Corp. v. Sealy, Inc., 402 F.2d 370, 375 (7th Cir. 1968) (emphasis added); see also Batchelor v. Sears, Roebuck & Co., 574 F. Supp. 1480, 1483 (E.D. Mich. 1983) (same).

Defendant AmeriSales has failed to satisfy this initial burden. Rather than identifying facts or portions of the record, Defendant AmeriSales vaguely notes that its motion "either references fact and law in separately filed pleadings or sets forth relevant facts and law herein." Defendant AmeriSales, Inc.'s Motion for Summary Judgment as to All Claims Against It (ECF 108 at pg.2) (hereinafter "AmeriSales' Motion"). Despite its assertion, AmeriSales' Motion never identifies the specific facts and law from other pleadings upon which it purportedly relies. AmeriSales' vagueness impairs Plaintiffs' ability to respond substantively to AmeriSales' Motion and fails to give the Court sufficient guidance to examine the merits of AmeriSales' claims. Accordingly, because Defendant AmeriSales has failed to satisfy its initial burden under Rule 56(c), this Court should deny AmeriSales' motion even without considering Plaintiffs' response.[1]

## III. LAW AND ARGUMENT

### A. AmeriSales has Damaged Plaintiffs, Undermining AmeriSales' Sole Basis for Summary Judgment in its Favor.

AmeriSales contends that Plaintiffs' claims against it fail for the sole reason that Plaintiffs have failed to allege any damages attributable to it. AmeriSales' contention is wrong. Plaintiffs have provided evidence of specific damages caused by AmeriSales. A component of the damages Plaintiffs have suffered is lost royalties, which Plaintiffs attribute to AmeriSales' wrongful acts. See AmeriSales Memorandum, Ex. A thereto (ECF 108-2, pg.4 per ECF page count).

Additionally, the evidence in the record supports a finding that AmeriSales is the alter ego of Defendants Duffy, Wilmington, and/or GPI and is therefore liable for their wrongful

---

[1] Indeed, Defendant AmeriSales' motion consists of four substantive pages yet seeks a judgment in AmeriSales' favor on six counts in Plaintiffs' Amended Complaint. This fact alone strongly suggests that AmeriSales has given Plaintiffs' claims short shrift and recommends that the Court should view AmeriSales' Motion with skepticism.

conduct. There is no dispute that Defendant GPI sold hundreds of thousands of dollars worth of GutterPiller products both before and after Plaintiffs' termination of the License Agreement with AmeriSales. During the term of the License Agreement, Defendant GPI sold GutterPiller products under the License Agreement and actually paid certain (although partial) royalties to Plaintiff Rainworks as required by the AmeriSales License Agreement. Defendant Wilmington registered the GutterPiller brand and website which, according to the AmeriSales License Agreement, belong to Plaintiff Rainworks. See Verified Complaint (ECF 1), Ex. 4 thereto, §6. Defendant Duffy is sole owner and president of Defendants AmeriSales, Wilmington, and GPI and there is ample evidence that Defendants AmeriSales and GPI were undercapitalized given their ongoing inability to pay their debts as they came due.

Plaintiffs outline these arguments in detail in their opposition to the Duffy Defendants' motion for partial summary judgment and incorporate by reference those facts and arguments as if set forth here. Based thereon, a reasonable jury could find that Defendant AmeriSales is the alter ego of the Duffy Defendants and could find AmeriSales jointly and severally liable for the damages that Dr. Harvey Rosen ascribes specifically to the Duffy Defendants. See AmeriSales Memorandum, Ex. 2 thereto (ECF 108-2).

The case of DeCastro v. Wellston City School District Bd. of Ed., 94 Ohio St. 3d 197, 199 (2002) does not force a different conclusion. AmeriSales relies upon DeCastro for the proposition that it is entitled to a summary judgment because Plaintiffs allegedly cannot prove specific consequential damages which are attributable to AmeriSales. AmeriSales' reliance on DeCastro, however, is misplaced for several reasons. First, as AmeriSales admits, DeCastro specifically allows claims for breach of contract to proceed even where the plaintiff has no proof of consequential damages. Id. at 199 (stating that "where a plaintiff proves breach of contract at

trial but fails to prove actual damages resulting from that breach, the trial court may enter judgment for the plaintiff and award nominal damages."). Thus, even if the Court agrees that Plaintiffs cannot ascribe specific damages to Defendant AmeriSales, DeCastro does not require a summary judgment in AmeriSales' favor.

Additionally, DeCastro is distinguishable on its facts from this case. In DeCastro, the plaintiff appealed the trial court's prior grant of summary judgment in defendants' favor on plaintiff's breach of contract claim. The Ohio Supreme Court declined to reverse the trial court's grant of summary judgment against the plaintiff finding that summary judgment was proper not because plaintiff lacked affirmative factual evidence of consequential damages but because plaintiff "could not even theorize the existence of economic damages" given the nature of the breach that he alleged. Id. (emphasis added); see also Id. at 202 (stating, "[T]his is a case where the plaintiff acknowledged at the outset that no economic damage occurred."). Such is not the case here. Plaintiffs have provided evidence that they suffered economic harm as a result of the Defendants' (including AmeriSales') breaching and infringing activities. See Damages Expert Report of Dr. Rosen (ECF 108-2). Plaintiffs also have advanced factual claims where the law clearly supports an award of damages. See Plaintiffs' Motion for Partial Summary Judgment (ECF 105).

Finally, and perhaps most importantly, the holding of DeCastro makes plain its inapplicability to this case:

> In accordance with these established legal concepts, we hold that summary judgment may be granted to the defendant in a breach-of-contract case where the plaintiff has failed to provide evidence of economic damages resulting from a breach of contract and has failed to seek injunctive relief or specific performance of a contractual duty, but instead rests his or her right to proceed to trial solely on a claim for nominal damages. That is the status of the case at bar.

Id. at 201 (emphasis added). In addition to consequential contractual and infringement damages, Plaintiffs seek equitable relief against AmeriSales both under the License Agreement and for patent infringement. See Plaintiffs' Amended Complaint (ECF 47 at pgs.28-29). Specifically, for example, Plaintiffs seek an injunction against future infringement of the '068 Patent by AmeriSales and further seek AmeriSales' specific performance of the non-compete obligations set forth in the License Agreement. Additionally, Plaintiffs' Amended Complaint prays for punitive damages, attorneys' fees, and costs against AmeriSales for willful infringement of the '068 Patent. Each of these damages can be quantified and proved at trial once AmeriSales' liability is established. As a result, because the evidence supports a finding of liability against AmeriSales on Counts 1, 9, 13, and 15, AmeriSales is not entitled to a summary judgment simply because it erroneously believes that evidence of consequential damages is lacking. In fact, a specific component of the damages Plaintiffs seek is directly attributable to AmeriSales (ECF 108-2, pg.4 per ECF page count), with the remaining damages being assessed to AmeriSales via an alter-ego theory (ECF 108-3, pgs.70-71 per ECF page count). As such, AmeriSales' motion for summary judgment– premised on the purported absence of any damages which can be attributed to it – must be denied.

### B. Plaintiffs' Joint Motion for Partial Summary Judgment Sets Forth Facts That, at a Minimum, Allow a Jury to Find in Plaintiffs' Favor on Counts 1, 9, 13, and 15.

AmeriSales' motion for summary judgment in its favor on Counts 1, 9, 13, and 15 of Plaintiffs' Amended Complaint must be denied for an additional reason. Each of these claims is also the subject of Plaintiffs' own affirmative motion for summary judgment in their favor. See Plaintiffs' Joint Motion for Partial Summary Judgment (ECF 105). In that motion, Plaintiffs show why they are entitled to summary judgment on those claims, establishing the elements to support such claims. Thus, at a minimum, the facts and law set forth in Plaintiffs' joint motion

for summary judgment in their favor preclude a finding in AmeriSales' favor as a matter of law on these claims and compel a denial of AmeriSales' motion for summary judgment with respect to Counts 1, 9, 13, and 15 of Plaintiffs' Amended Complaint.

### C. For the Reasons Set Forth in Plaintiffs' Opposition to the Duffy Defendants' Motion for Partial Summary Judgment, a Reasonable Jury Could Find in Plaintiffs' Favor on Count 10 of Plaintiffs' Amended Complaint.

AmeriSales request for judgment in its favor on Count 10 of Plaintiffs' Amended Complaint, which asserts a claim for tortious interference with prospective economic advantage, also must be denied for additional reasons.

Pursuant to the License Agreement and the First Amendment thereto (Plaintiffs' Motion for Partial Summary Judgment (ECF 105) at Exs. 1 and 2), AmeriSales was the exclusive licensee for Plaintiffs' GutterPiller products. Count 10 alleges that the Defendants tortiously interfered with Plaintiffs' efforts to find a successor licensee after Plaintiffs terminated the License Agreement.

The Duffy Defendants similarly seek a summary judgment on Count 10 in their motion for partial summary judgment. The facts and law set forth in Plaintiffs' opposition to the Duffy Defendants' motion for partial summary judgment on Count 10 apply with equal force to AmeriSales' request for a summary judgment on this claim. Accordingly, Plaintiffs incorporate by reference here all of their arguments set forth in their opposition to the Duffy Defendants' request for summary judgment on Count 10 of Plaintiffs' Amended Complaint. Those arguments, in summary, show that Defendant Duffy tortuously interfered with Plaintiffs' efforts to secure a successor partner. Consequently, a reasonable jury could conclude that Defendant Duffy (AmeriSales' owner and president) was acting on AmeriSales' behalf as the prior licensee when he engaged in the accused conduct of interfering with Plaintiffs' prospective business

relationship with a successor licensee. For this additional reason, the Court should deny AmeriSales' motion for summary judgment as to Count 10.

### D. The Record Supports a Finding That AmeriSales Tortiously Interfered With Plaintiffs' Agreement With Defendant Mill-Rose (Count 11).

Plaintiffs also can establish a prima facie case for AmeriSales' tortious interference with the Confidential Disclosure Agreement executed between Plaintiffs and Defendant Mill-Rose (copy attached as Exhibit M to Mill-Rose's Memorandum in Support of its Motion for Summary Judgment (ECF 118-16))(attached as Ex. C. hereto). As such, AmeriSales' request for summary judgment on this claim is also misplaced, regardless of the invalidity of its damages argument (described in section III.A. above).

Tortious interference occurs when a defendant "improperly interferes with the performance of a contract ... between another and a third person by inducing or otherwise causing the third person not to perform the contract." Kenty v. Premium Ins. Co., 72 Ohio St. 3d 415, 4180419 (1995). The elements for such a claim include: a contract which the wrongdoer knew about and unjustifiably caused to be breached, resulting in damages. Fred Siegel Co., L.P.A. v. Arter & Hadden, 85 Ohio St. 3d 171, 176 (1999). Those elements exist here.

Defendants AmeriSales and Duffy knew that Plaintiffs had previous discussions with Mill-Rose about manufacturing the GutterPiller product. See Duffy Depo. Ex. CC-2 at 2 (Plaintiffs write to Duffy in 1997 that "Mill-Rose have[sic] samples ready and waiting of the new Gutter Protector profiles I have designed for the US market.")(attached at Exhibit A hereto).[2] Defendants AmeriSales and Duffy also knew that Mill-Rose and Rainworks had

---

[2] Defendant AmeriSales may attempt to argue that Duffy Deposition Ex. CC-2 contains inadmissible hearsay and is therefore inappropriate for consideration on a motion for summary judgment. The above-quoted portion, however, is not hearsay because it is not offered for its truth. Rather, Plaintiffs offer it to show that Defendants Duffy and AmeriSales had notice of Mill-Rose's prior manufacturing history and business relationship with the Plaintiffs. Even if it was hearsay, it would be admissible under Fed. R. Evid. 803(3) to show AmeriSales' mindset.

marketed the GutterPiller product (as the Hedgehog) at Mill-Rose's booth at the 1997 Chicago Hardware Show. See Duffy Depo. at 77:21-79:8 (attached at Exhibit B hereto). Indeed, it was at this show were Plaintiff Herdman first met Defendant Duffy's then "partner" in Speare Tools.[3] Defendant Duffy also testified that the 1997 Chicago Hardware show (i.e., where Mill-Rose and Rainworks were jointly promoting the GutterPiller/Hedgehog product) was where he believes he first had any contact with Defendant Mill-Rose. Duffy Depo. at 363:17-364:16 (attached at Ex. B hereto). Defendant Duffy testified "that year or the next" (i.e., 1997 or 1998), he talked with Defendant Mill-Rose about quoting a price to manufacture the GutterPiller/Hedgehog product for him. Id. at 364:19-365:9 (Ex. B hereto). AmeriSales therefore knew about the relationship between Plaintiffs and Defendant Mill-Rose.

Defendants Duffy and AmeriSales also knew that Plaintiffs were very careful about disclosing their product information and knew that Plaintiffs would not do so without a suitable confidentiality agreement in place. See Duffy Depo. Ex. 5 at 2 (confidentiality agreement between Rainworks and Speare Tools, executed by Defendant Duffy)(attached at Ex. A hereto); Plaintiffs' Joint Motion for Partial Summary Judgment (ECF 105) at Ex. 1, § 11 (also referring to confidentiality); Duffy Depo. Ex. CC-2 (describing Rainworks' public disclosures about the GutterPiller/Hedgehog product as "superficial" and noting that they "do not reveal the research and development work that has gone into producing the product of today and the knowledge that has been gained to produce the product of tomorrow.")(attached at Ex. A hereto). In fact, Defendant Duffy (AmeriSales' president) testified that he considers "the type of filament, the size of wire, what type of product we were using, and obviously who our supplier was" to be

---

[3] Although Defendant Duffy held himself out as the "Vice President of Sales & Marketing" for Speare Tools (Duffy Depo. Ex. 5)(attached at Ex. A hereto), Defendant Duffy argues that he had no official affiliation with Speare Tools and merely referred to himself as having that position to attract business. Duffy Depo. at 37:18-39:8 (attached at Exhibit B hereto).

confidential information. Duffy Depo. at 98:16-20 (attached at Ex. B hereto). Based on these facts, and Defendant AmeriSales' (and its president's) personal knowledge of the importance of confidentiality to Plaintiffs, a jury could conclude that Defendant AmeriSales reasonably knew that Plaintiffs had likewise insisted on a confidentiality agreement from Mill-Rose when they were working together.

The record also shows that Defendant Duffy approached Defendant Mill-Rose and asked Mill-Rose to make the Rainworks product that AmeriSales was selling under the License Agreement. During this time, Defendant Duffy was also selling the Rainworks/AmeriSales licensed product through Defendant GPI. Duffy Depo. at 24:20-24:23; 372:4-11 (attached at Ex. B hereto); Michael Herdman Depo. at 293:3-294:9 (attached as Ex. D. hereto). Also at this time, Defendant Mill-Rose was still in possession of at least one sample of the product that it had made for Plaintiffs in 1997 and also still had the original sample that Plaintiff Rainworks had provided to Mill-Rose. Paul Miller Depo. at 135:5-9 (attached at Ex. E hereto). Prior to working with the Plaintiffs, Mill-Rose had tried to manufacture its own twisted in-wire gutter filter product but its efforts had consistently failed. Miller Depo. at 37:24-38:17, 139:17-140:8, 142:8-21 (attached at Ex. E. hereto).

The other Defendants had no direct experiencing manufacturing the gutter filter and Mill-Rose's only experience making successful gutter filters came from its prior manufacture of products for Rainworks. Duffy Depo. at 373:21-374:10 (attached at Ex. B hereto). Considering all of these undisputed facts, and construing them in the light most favorable to the Plaintiffs, a reasonable jury could find that Mill-Rose used the Rainworks sample and other Rainworks confidential information to manufacture the products for the other Defendants (which prior thereto, Rainworks defectively manufactured). Such use constitutes a direct violation of the

Confidential Disclosure Agreement. <u>See also</u> Plaintiffs' Joint Memorandum in Opposition to The Mill-Rose Company's Motion for Summary Judgment at Sec. III.D, for additional facts and arguments, which are incorporated herein, showing Mill-Rose breached the Confidential Disclosure Agreement.

Based upon these facts, a jury could reasonably infer that Defendant AmeriSales, through its president Defendant Duffy, tortiously called upon Defendant Mill-Rose to use and disclose the confidential information and knowledge obtained from Mill-Rose's prior business relationship with the Plaintiffs to breach its Confidential Disclosure Agreement to enable it to manufacture the GutterPiller products for Defendants. Accordingly, this Court should deny Defendant AmeriSales' motion for summary judgment as to Count 11 for this additional reason.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Defendant AmeriSales' motion for summary judgment. The facts and law set forth in Plaintiffs' motion for partial summary judgment, at a minimum, establish a <u>prima facie</u> case for the claims set forth in Counts 1, 9, 13, and 15 of Plaintiffs' Amended Complaint. Those facts include evidence of damages specifically attributable to AmeriSales. Likewise, as set forth in Plaintiffs' memorandum in opposition to the Duffy Defendants' motion for partial summary judgment, the record contains ample evidence to allow a reasonable jury to conclude that Defendant AmeriSales is the alter ego of Defendants Duffy, Wilmington, and GPI and that Defendant AmeriSales is therefore jointly liable for all of the damages caused by the Duffy Defendants. The record also allows a finding that Defendant AmeriSales tortiously interfered with Plaintiffs' efforts to replace Defendant AmeriSales as the distributor of GutterPiller products after Plaintiffs terminated the License Agreement in 2002. As a result, summary judgment in Defendant AmeriSales' favor on Count 10 is inappropriate for this additional reason. The same holds true for Count 11, where the evidence in the record

(which included the testimony of Defendant Duffy (AmeriSales' president) and Defendant Mill-Rose's president), reveals a genuine issue of fact as to whether Defendant AmeriSales tortiously interfered with the Confidential Disclosure Agreement executed between Plaintiff Rainworks and Defendant Mill-Rose by convincing Defendant Mill-Rose to manufacture for the other Defendants the product that Defendant Mill-Rose had previously produced for Plaintiff Rainworks pursuant to the Confidential Disclosure Agreement. Accordingly, Defendant AmeriSales is not entitled to a summary judgment in its favor on any of the claims asserted against it.

        Respectfully submitted,

        /s/ H. Alan Rothenbuecher
        H. Alan Rothenbuecher (0041883)
          hrothenbuecher@szd.com
        T. Earl LeVere (0063515)
          elevere@szd.com
        Schottenstein Zox & Dunn Co., LPA
        US Bank Centre at Playhouse Square
        1350 Euclid Ave., Suite 1400
        Cleveland, Ohio 44115

        *Attorneys for Plaintiffs Rainworks Limited*
        *and Michael Laurence Herdman*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2008, a copy of the foregoing PLAINTIFFS' JOINT MEMORANDUM IN OPPOSITION TO AMERISALES INC.'S MOTION FOR SUMMARY JUDGMENT was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ H. Alan Rothenbuecher
H. Alan Rothenbuecher