# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **RAINWORKS LIMITED, et al.,** | ) | **CASE NO. 1:06CV1549** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **THE MILL-ROSE COMPANY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon Plaintiffs' Joint Motion (ECF DKT #105) for Partial Summary Judgment in their favor as to liability only against Defendants, AmeriSales, Inc., Gutterpiller, Inc., and The Mill-Rose Company, on Counts 1, 6, 7, 9, 13, and 15 of Plaintiffs' Amended Complaint.  For the following reasons, the motion is denied.

## I. FACTUAL BACKGROUND

Plaintiff, Rainworks Limited ("Rainworks"), is a New Zealand corporation in the business of manufacturing and distributing gutter protection systems and rainwater harvesting components.  One Rainworks product is a gutter protector known as the Hedgehog™.  Plaintiff, Michael Laurence Herdman ("Herdman"), also known as Laurie Dee, is the

managing director of Rainworks and a resident of New Zealand.  Herdman is the inventor of the Hedgehog™ and the owner of United States Patent Number Des. 381,068 ('068) for the ornamental design for a gutter filter.  Herdman obtained the patent in 1997.

Defendant The Mill-Rose Company ("Mill-Rose") is an Ohio corporation headquartered in Mentor, Ohio and the manufacturer of twisted-in-wire brushes which it sells throughout the United States.

Defendant AmeriSales, Inc. ("AmeriSales") was an Illinois corporation that manufactured cleaning products and housewares.  AmeriSales is no longer in operation.

Defendant Gutterpiller, Inc. ("GPI") is an Illinois corporation, started in 2001, that markets and sells a gutter protector called GutterPiller®, through a network of distributors and franchisees.

Defendant Wilmington International, Inc. ("Wilmington") is an Illinois corporation that claims to own the GutterPiller® trademark.

Defendant Thomas J. Duffy ("Duffy") is an Illinois resident who was president and sole shareholder of AmeriSales, is an officer and sole shareholder of GPI, and is an officer and shareholder of Wilmington.

In 1997, Rainworks approached Mill-Rose about making, marketing, and selling the Hedgehog™ in the United States.  To assist Mill-Rose in evaluating the manufacturing, marketing and sales potential, Rainworks supplied Mill-Rose with confidential information and samples of its product.  The parties entered into a Confidential Disclosure Agreement (Ex. #2 to Amended Complaint, ECF DKT #47).

On June 23, 2000, AmeriSales and Rainworks entered into a License Agreement for

the manufacture and sale of gutter filters, gutter spades, and gutter brushes which AmeriSales was to sell under the GutterPiller® brand name.  (Ex. #4 to Amended Complaint, ECF DKT #47).  AmeriSales was granted an exclusive license to make and market the gutter products in North, Central and South America.  AmeriSales agreed to pay royalties based upon net sales and to pay minimum royalties annually.  Under no circumstances was AmeriSales permitted to market the products by means of the Internet.  The Agreement provided further that Rainworks shall own all brand names, as well as enhancements and improvements to the products.  Subject to termination due to breach or nonpayment of royalties, and in the absence of renewal, the Agreement would expire on December 31, 2006.  A First Amendment of the License Agreement, extending the territory to Europe, was executed by Rainworks and AmeriSales on February 22, 2001.  In both documents, the minimum royalties specified did not impose liability upon AmeriSales to pay such amounts.  Rainworks' recourse was either to remove Europe from the designated marketing territory or terminate the License Agreement.  During the term of the License Agreement, and for one year after termination, AmeriSales was prohibited from manufacturing or marketing, or aiding or abetting any other person manufacturing or marketing, any directly competing products.

Rainworks sent AmeriSales the ninety-day notice of termination of the License Agreement for failure to pay minimum royalties on April 30, 2002.  Although negotiations continued into March of 2003, no new agreements were signed by the parties.

In their Amended Complaint, Plaintiffs assert fifteen claims for relief:

1.  Patent Infringement by GPI, Duffy, AmeriSales, Wilmington, and Mill-Rose

2.  Inducement of Patent Infringement by Duffy

-3-

3. Trademark Infringement under 15 U.S.C. §§ 1114 by GPI, Duffy, Wilmington, and Mill-Rose

4. Federal False Designation of Origin by GPI, Duffy, Wilmington, and Mill-Rose

5. State Common-Law Trademark Infringement by GPI, Duffy, Wilmington, and Mill-Rose

6. Lanham Act False Advertising by GPI, Duffy, Wilmington, and Mill-Rose

7. State Deceptive Trade Practices by GPI, Duffy, Wilmington, and Mill-Rose

8. Breach of Contract by Mill-Rose

9. Breach of Contract by AmeriSales

10. Tortious Interference with Prospective Economic Advantage by GPI, Duffy, Wilmington, and AmeriSales

11. Tortious Interference with Contract by GPI, Duffy, AmeriSales, and Wilmington

12. Tortious Interference with Contract by Mill-Rose

13. False Marking - All Defendants

14. Piercing Corporate Veil - Duffy and GPI

15. Unfair Competition by GPI, Duffy, AmeriSales, Wilmington, and Mill-Rose

Each party has filed a motion for partial or total summary judgment, and briefing has been completed.  On March 9, 2009, Plaintiffs and Defendant AmeriSales filed a Stipulation of Dismissal of the claims and counterclaims between them; therefore, Plaintiffs' Motion for Partial Summary Judgment as against AmeriSales, and Defendant AmeriSales' Motion for Summary Judgment are denied as moot.

# II. LAW AND ANALYSIS

## Standard of Review

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006); *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). The initial burden to demonstrate the absence of a genuine issue of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "When a motion for summary judgment is properly made and supported" the initial burden shifts to the opposing party, who "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2004); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). A fact is material only if its resolution "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464

(6th Cir. 2006); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005).  "Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, the court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Circ. 1996).  Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute.  *Anderson*, 477 U.S. at 249-250.

## Patent Law

In the area of patents, the substantive law of the Federal Circuit Court of Appeals is binding on this Court.  Pursuant to 28 U.S.C. § 1295(a), Congress vested the Federal Circuit with exclusive jurisdiction over appeals from the district court, if the jurisdiction of that court was based upon 28 U.S.C. § 1338.  Section 1338(a) provides in part that "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents ... ."  *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc*., 535 U.S. 826 (2002).

## Breach of the License Agreement (Count 9)

Plaintiffs, Herdman and Rainworks, seek partial summary judgment as to liability only for breach of the License Agreement as against Defendants, AmeriSales and GPI..

As an initial matter, the Court notes that item 13.1 of the June 23, 2000 License

-6-

Agreement provides: "This agreement shall be governed by the laws of the State of Illinois, United States of America."  In Illinois, an action for breach of contract requires the following four elements:  "(1) the existence of a valid and enforceable contract; (2) the breach of the contract by the defendant; (3) performance of the contract by the plaintiff; and (4) a resulting injury to the plaintiff."  *Taimoorazy v. Bloomington Anesthesiology Service, Ltd.*, 122 F. Supp.2d 967, 974 (C.D. Ill. 2000).  Under Ohio law, the elements of a breach of contract claim are: "(1) that a contract existed, (2) that the plaintiff fulfilled his obligations, (3) that the defendant unlawfully failed to fulfill his obligations, and (4) that damages resulted from this failure."  *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 563 (6th Cir. Ohio 2007).  Therefore, this Court determines, after its own analysis, and without any discussion of the applicable law by the parties, that the prerequisites for a breach of contract claim in Illinois and Ohio are nearly identical, and that citations to Ohio law, where necessary, will suffice in this regard.

The only signatories to the June 23, 2000 License Agreement and the February 22, 2001 First Amendment to License Agreement are Rainworks, by Mr. Laurie Dee, Managing Director and AmeriSales by Mr. Thomas J. Duffy, President.  AmeriSales has been dismissed from this lawsuit; so this Court need not analyze alleged contractual breaches by AmeriSales.  Further, Plaintiffs admit in their Joint Reply they "did not move for summary judgment in their favor on their free-standing general claim to pierce the corporate veil for all purposes (Count 14)."  ECF DKT #138, p.9.  The Court notes that Count 14 does not recite an independent cause of action; but rather seeks recovery from Defendants Duffy and GPI that Plaintiffs would only otherwise obtain against AmeriSales.

Generally, the corporate form is accorded a great deal of respect.  *Ruffing v. Masterbuilt Tool & Die*, No. 1:08CV01264, 2009 WL 185950, at *13 (N.D. Ohio Jan.23, 2009) (citing *Music Express Broad Corp. v. Aloha Sports, Inc.*, 161 Ohio App.3d 737 (2005)).  "Limited liability is the rule, not the exception; and on that assumption large undertakings are rested, vast enterprises are launched, and huge sums of capital attracted."  *Anderson v. Abbott*, 321 U.S. 349, 362 (1944).  Consequently, a court may pierce the corporate veil only rarely.  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).

The party seeking to disregard the corporate form, must "demonstrate that the grounds for piercing the corporate veil exist."  *Nursing Home Group Rehab. Servs., LLC* v. *Suncrest Health Care, Inc.*, 162 Ohio App.3d 577, 581 (2005).  Plaintiffs, Herdman and Rainworks, have not satisfied that burden; and, thus, partial summary judgment against GPI on Count 9 breach of contract is denied.

**Patent Marking**

35 U.S.C. § 287(a) provides:

(a) Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, ***or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice***.  In the event of failure so to mark, no damages shall be recovered by the patentee in any action

-8-

for infringement, except on proof that the infringer was notified of the

infringement and continued to infringe thereafter, in which event damages may

be recovered only for infringement occurring after such notice.  Filing of an

action for infringement shall constitute such notice.  (Emphasis added).

In other words, a patentee or other party selling a product under a patent must mark

the product with the word "patent" or the abbreviation "pat.", along with the number of the

patent, to provide notice to the public.  If the product itself cannot feasibly be marked, then

the packaging containing it may be marked instead.  *Id.*; *Banner Pharmacaps Inc. v. Perrigo

Company*, No. 1:04CV492, 2005 WL 2136927, at *7 (M.D.NC. Aug.1, 2005).  The patentee

bears the burden of proving compliance with the marking statute.  *Maxwell v. J. Baker, Inc.*,

86 F.3d 1098, 1112-13 (Fed.Cir. 1996).  Compliance with the marking statute is a question of

fact.  *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed.Cir. 2001).

## False Marking under 35 U.S.C. § 292 (Count 13)

Plaintiffs allege that Defendants' marking or advertising of GutterPiller® gutter

protectors as patented, when Defendants believed such gutter protectors were not covered by

any patent whatsoever, constitutes false marking under 35 U.S.C. § 292.

35 U.S.C. § 292(a) reads in pertinent part: "Whoever marks upon, or affixes to, or uses

in advertising in connection with any unpatented article, the word "patent" or any word or

number importing that the same is patented ***for the purpose of deceiving the public*** ... shall be

fined not more than $500 for every such offense."  (Emphasis added).  In subsection (b):

"Any person may sue for the penalty, in which event one-half shall go to the person suing and

the other to the use of the United States."

-9-

"As a general proposition, there can be no violation of § 292 absent an evidentiary
showing that the false marking or mismarking was 'for the purpose of deceiving the public.'"
*Arcadia Machine & Tool Inc. v. Sturm, Ruger & Company, Inc.*, 786 F.2d 1124, 1125
(Fed.Cir. 1986).

Defendant Duffy testified in his deposition at page 7 as follows:

Q.  Do you ever put a marking of patent on any of your packages?

A.  Yes, and it was in error.

Q.  How so done by error?

A.  We – actually was supposed to be our registration number for the registration of
our name ...

Paul Miller, the president of Defendant Mill-Rose, states in his Declaration (ECF DKT #123,
Ex. A) as follows:

¶ 7.  GPI provided Mill-Rose all instructions regarding the type of box GPI's brushes
manufactured by Mill-Rose should be packaged.  GPI also provided Mill-Rose the
location the boxes containing GPI's products were to be shipped.

¶ 8.  When GPI's brushes were packaged by Mill-Rose in generic brown boxes, Mill-
Rose applied a GPI label to the outer surface of the generic brown boxes prior to
shipping the generic brown boxes.  The generic brown boxes had no markings other
than GPI's label, GPI designed and approved GPI's labels that were applied to the
generic brown boxes. ... None of the brushes Mill-Rose manufactured for GPI
included any patent markings.

¶ 11. Mill-Rose was not involved with the design and content of the pictures and

-10-

materials printed on GPI's retail boxes. ...

¶ 12.  Mill-Rose received all instructions from GPI regarding where Mill-Rose was to purchase GPI's retail boxes and how much money Mill-Rose was to pay for GPI's retail boxes purchased from GPI's box manufacturer.

Viewing this evidence in a light most favorable to the non-moving Defendants, the patent markings about which Plaintiffs complain were found on the packaging, and not on the product.  There is no evidence that it would not have been feasible to mark on the gutter filter brushes themselves.  Because marking the outer packaging, when marking the product could be done, is insufficient for the notice requirements of 35 U.S.C. § 287(a), the actions of Defendants GPI and Mill-Rose are equally insufficient for false marking liability under the penal statute, 35 U.S.C. § 292(a).  Additionally, in light of Duffy's sworn testimony that any marking with a patent number was done mistakenly, and Miller's testimony that the brushes had no patent marking and the boxes were ordered per GPI's instructions, there is a genuine issue of material fact as to any intent to deceive the public required by 35 U.S.C. § 292(a). "Intent to mislead or deceive is a factual issue that, if contested, is not readily determined within the confines of Fed.R.Civ.Proc. 56." *Kangaroos U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1573 (Fed. Cir. 1985) (citing *Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 185, 190 USPQ 273, 277 (8th Cir. 1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751, 192 USPQ 543 (1977)).  Plaintiffs' Joint Motion for Partial Summary Judgment on Count 13 is denied.

**Patent Infringement under Doctrine of Patent Marking Estoppel (Count 1)**

Plaintiffs allege Defendants, GPI, Duffy, AmeriSales, Wilmington and/or Mill-Rose marked some or all of their products and/or packaging with the number of the '068 Patent, and are now estopped from denying infringement of the '068 Patent.

"In a civil context, it has been held that placing a patent number on a product will estop a manufacturer from denying that his product embodies the patent for purposes of liability for both patent infringement damages and patent license royalties." *Boyd v. Schildkraut Giftware Corp.*, 936 F.2d 76, 79 (2d Cir. 1991) (citations omitted).  The marking estoppel doctrine has been questioned by at least one district court. *High Frequency Products, Inc. v. Wynn's Climate Systems, Inc.*, 892 F.Supp. 1515 (S.D.Fla. 1995), aff'd, 91 F.3d 167 (Fed.Cir. 1996).  In any event, "marking estoppel, like other varieties of estoppel, should arise only when a consideration of all aspects of a defendant's pertinent conduct makes it inequitable for him to take a position contrary to his prior statements or actions." *Boyd*, 936 F.2d at 79.  The doctrine warns manufacturers that "care must be taken in avoiding misrepresentation to the public that goods are protected by a patent." *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 890-91 (Fed.Cir. 1988) (quoting *Crane Co. v. Aeroquip Corp.*, 364 F.Supp. 547, 560 (N.D.Ill. 1973)).  However, "[i]n cases where there is no actual infringement, it would be absurd to preclude an accused infringer from defending on grounds that the product doesn't infringe.  Moreover, in cases where there is infringement, the patent holder has adequate remedies under Title 35 for infringement (35 U.S.C. § 271) and for mismarking (35 U.S.C. § 292)." *High Frequency*, 892 F.Supp. at 1519.

Consistent with the previous analysis of this Court, the patent marking estoppel doctrine does not apply to the conduct of Defendants, Duffy, GPI, Wilmington and Mill-Rose. Based upon the evidence, the design patent number '068 was marked on boxes or packaging (not on the product itself) for a significant period of time, and the Defendants' brushes were described as patented in advertising. This activity, nonetheless, is insufficient for false marking liability under 35 U.S.C. 292, and does not justify foreclosing Defendants' defenses and prosecution of their non-infringement counterclaims. The Court, sitting in equity, must consider the totality of Defendants' conduct, the sufficiency of Plaintiffs' claims, and the validity of Defendants' defenses. If infringement liability is found, Plaintiffs have legal statutory remedies available. Therefore, Plaintiffs' motion for partial summary judgment on Count 1 is denied.

**Lanham Act False Advertising under 15 U.S.C. § 1125 (Count 6)**

Plaintiffs allege GPI, Duffy, Wilmington and Mill-Rose made false and misleading statements about the characteristics, ownership, nature, and qualities of the GutterPiller® gutter protector, in commerce and in the context of commercial advertising and promotion. Plaintiffs further allege that advertising and promoting a product as "patented" or covered by a particular patent, when it is not, constitutes false advertising under the Lanham Act (15 U.S.C. § 1125).

In *American Council of Certified Podiatric Physicians and Surgeons v. American Bd. of Podiatric Surgery, Inc*., 185 F.3d 606 (6th Cir. 1999), the Sixth Circuit announced five elements necessary to prove liability under the Lanham Act:

[A] plaintiff *must* establish the following: 1) the defendant has made false or

-13-

misleading statements of fact concerning his own product or another's; 2) the statement actually deceives or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence a deceived consumers' [sic] purchasing decisions; 4) the advertisements were introduced into interstate commerce; 5) there is some causal link between the challenged statements and harm to the plaintiff.  *Id.* at 613; see also *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 322 (6th Cir. 2001).

Plaintiffs are not entitled to summary judgment on their Lanham Act claim because there are genuine issues of material fact which prevent Plaintiffs from establishing the elements necessary to Defendants' liability.  The evidence submitted by Mill-Rose and GPI goes to the third element of a material statement likely to influence a consumer's purchasing decision, and the fifth element of a causal link between the challenged statements and harm suffered by Plaintiffs.

Paul Miller, the president of Mill-Rose, states in his Declaration (ECF DKT #123, Ex. A) in pertinent part:

¶ 15. ... GPI's customers and potential customers do not contact Mill-Rose to inquire about purchasing GPI's products.  Mill-Rose has never received any orders for GPI's products from GPI's customers and potential customers.  Mill-Rose has never filled any orders for GPI's products without first receiving instructions from GPI. ...

¶ 16.  Mill-Rose has never advertised GPI's products on a website or on any type of printed material.  Mill-Rose has never been involved with or contributed in any way to the design and maintenance of GPI's website. ...Mill-Rose has never been involved

-14-

with or contributed in any way to the design of any GPI advertising or marketing

literature.  Mill-Rose has never marketed any of GPI's products to GPI's customer or

potential customers. ...

Even if Mill-Rose is held responsible for the labeling of the packages containing

GutterPiller® brushes with a patent number or a patent designation, the customers do not

place orders with Mill-Rose and orders are not filled except upon GPI's instructions.  Mill-

Rose has shown that it only packed and shipped GPI's products to GPI's customers after the

purchase had already been made.  A genuine issue is created, therefore, as to whether or not

markings on the packaging likely and materially influenced purchasing decisions.

GPI provides evidence demonstrating that Rainworks and GPI are not true competitors

and that there is no causal link between the statements GPI made about its products being

patented and harm to Plaintiffs.  In his deposition, Herdman, Rainworks' director, testifies as

follows at page 44:

Q.  Well, is Rainworks selling it in the United States?

A.  No. Sorry.

. . .

Q.  Is it fair to say that other than with Mr. Duffy and his company, Rainworks has not

received income from sales of your patented gutter filter in the United States?

A.  Correct.

Significantly, Herdman testified that no one in America has ever used his website to purchase

his product; and it would make no sense for an American to purchase his product using the

website because of the prohibitively high costs involved.  (Herdman Depo. at p.98).

-15-

Consequently, there is a genuine issue as to the extent of any harm suffered by Plaintiffs which is causally linked to the alleged false advertising attributed to the Duffy Defendants.

With these issues of material fact, Plaintiffs fail to establish the five elements necessary to prove liability under the Lanham Act, 15 U.S.C. § 1125.  Summary judgment in favor of Plaintiffs on Count 6 is denied.

**State Deceptive Trade Practices by GPI, Duffy, Wilmington, and Mill-Rose (Count 7)**

**Unfair Competition by GPI, Duffy, AmeriSales, Wilmington, and Mill-Rose (Count 15)**

Plaintiffs allege Defendants made false and misleading statements which actually deceived, or had the tendency to deceive, purchasers of gutter protectors, in violation of Ohio Revised Code Sections 4165.02 and 4165.03.  In their common-law unfair competition claim, Plaintiffs allege Defendants "are gaining an unfair advantage over Rainworks in the marketplace by utilizing and selling (or by aiding and abetting, or inducing the use and sale of) an infringing and falsely advertised product and by utilizing Plaintiffs' Marks, without the consent of and without payment to Plaintiffs."

The Court observes that both Plaintiffs and Defendants concede the analysis of a claim brought under the Ohio Deceptive Trade Practices Act is the same as that of a claim brought under the Lanham Act.  *Hassell v. Chrysler Corp.*, 982 F.Supp. 515, 526 (S.D.Ohio 1997), aff'd, 135 F.3d 778 (Fed.Cir. 1998); *Royal Appliance Mfg. Co. v. Hoover Co.*, 845 F.Supp. 469, 471 (N.D.Ohio 1994).  Plaintiffs further acknowledge the Ohio common law of unfair competition and the Lanham Act are not substantially dissimilar.  (ECF DKT #105, p.26, fn. 14).

Thus, the Court will not conduct an independent examination of the state claims.

-16-

Since genuine issues of material fact prevent judgment in favor of Plaintiffs on their Lanham

Act allegations, the Court equally holds partial summary judgment against Defendants and in

favor of Plaintiffs as to Count 7 and Count 15 is denied.

### III. CONCLUSION

For all the foregoing reasons, Plaintiffs' Joint Motion (ECF DKT #105) for Partial

Summary Judgment in their favor as to liability only against Defendants, AmeriSales, Inc.,

Gutterpiller, Inc., and The Mill-Rose Company, on Counts 1, 6, 7, 9, 13, and 15 of Plaintiffs'

Amended Complaint is denied.


**IT IS SO ORDERED.**

**DATE:   March 17, 2009**


**S/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**