**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RAINWORKS LIMITED, et al.,** | ) | **CASE NO.  1:06CV1549** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **THE MILL-ROSE COMPANY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J**.:

   This matter comes before the Court upon the Motion (ECF DKT #99) of Defendants,

Gutterpiller, Inc. ("GPI"), Wilmington International, Inc. and Thomas Duffy, for Partial

Summary Judgment on Counts 1, 2, 10, and 14 of Plaintiffs' Amended Complaint and the

Motion (ECF DKT # 118) of Defendant, The Mill-Rose Company ("Mill-Rose"), for

Summary Judgment of Non-Infringement, Invalidity, and Unenforceability of the '068 Patent,

No Breach of Contract, and No Tortious Interference With Contract (Counts 1, 2, 8 and 12 of

Plaintiffs' Amended Complaint and Defendant Mill-Rose's Counterclaim).  For the following

reasons, the Motion of Defendants, GPI, Wilmington and Duffy is granted and the Motion of

Mill-Rose is granted in part and denied in part.

## I. FACTUAL BACKGROUND

Plaintiff, Rainworks Limited ("Rainworks"), is a New Zealand corporation in the business of manufacturing and distributing gutter protection systems and rainwater harvesting components.  One Rainworks product is a gutter protector known as the Hedgehog™.  Plaintiff, Michael Laurence Herdman ("Herdman"), also known as Laurie Dee, is the managing director of Rainworks and a resident of New Zealand.  Herdman is the inventor of the Hedgehog™ and the owner of United States Patent Number Des. 381,068 ('068) for the ornamental design for a gutter filter.  Herdman obtained the patent in 1997.

Defendant The Mill-Rose Company ("Mill-Rose") is an Ohio corporation headquartered in Mentor, Ohio and the manufacturer of twisted-in-wire brushes which it sells throughout the United States.

Defendant AmeriSales, Inc. ("AmeriSales") was an Illinois corporation that manufactured cleaning products and housewares.  AmeriSales is no longer in operation.

Defendant Gutterpiller, Inc. ("GPI") is an Illinois corporation, started in 2001, that markets and sells a gutter protector called GutterPiller®, through a network of distributors and franchisees.

Defendant Wilmington International, Inc. ("Wilmington") is an Illinois corporation that claims to own the GutterPiller® trademark.

Defendant Thomas J. Duffy ("Duffy") is an Illinois resident who was president and sole shareholder of AmeriSales, is an officer and sole shareholder of GPI, and is an officer and shareholder of Wilmington.

In 1997, Rainworks approached Mill-Rose about making, marketing, and selling the

-2-

Hedgehog™ in the United States.  To assist Mill-Rose in evaluating the manufacturing,

marketing and sales potential, Rainworks supplied Mill-Rose with confidential information

and samples of its product.  The parties entered into a Confidential Disclosure Agreement.

(Ex. #2 to Amended Complaint, ECF DKT #47).  In their Amended Complaint, Plaintiffs

allege "Mill-Rose breached the Confidential Disclosure Agreement by disclosing and using,

without authorization, confidential information relating to the Hedgehog™ gutter protectors,

and misappropriating the intellectual property and other rights in the Hedgehog™ gutter

protector belonging to Rainworks and/or Herdman."  Specifically, the Confidential Disclosure

Agreement provided in part:

> 4.  The Mill-Rose Company will hold in confidence all confidential information, will
>
> not disclose the confidential information or permit it to be disclosed to any other
>
> person or body of persons, whether natural, corporate or incorporate other than those
>
> who are directly associated with The Mill-Rose Company.
>
> 5.  The Mill-Rose Company will not use or permit the use of confidential information
>
> for any purpose other than evaluating the products, without first obtaining Rainworks
>
> (NZ) Limited's express written permission to do so.

On June 23, 2000, AmeriSales and Rainworks entered into a License Agreement for

the manufacture and sale of gutter filters, gutter spades, and gutter brushes which AmeriSales

was to sell under the GutterPiller® brand name.  (Ex. #4 to Amended Complaint, ECF DKT

#47).  AmeriSales was granted an exclusive license to make and market the gutter products in

North, Central and South America.  AmeriSales agreed to pay royalties based upon net sales

and to pay minimum royalties annually.  Under no circumstances was AmeriSales permitted

to market the products by means of the Internet.  The Agreement provided further that Rainworks shall own all brand names, as well as enhancements and improvements to the products.  Subject to termination due to breach or nonpayment of royalties, and in the absence of renewal, the Agreement would expire on December 31, 2006.  A First Amendment of the License Agreement, extending the territory to Europe, was executed by Rainworks and AmeriSales on February 22, 2001.  In both documents, the minimum royalties specified did not impose liability upon AmeriSales to pay such amounts.  Rainworks' recourse was either to remove Europe from the designated marketing territory or terminate the License Agreement.  During the term of the License Agreement, and for one year after termination, AmeriSales was prohibited from manufacturing or marketing, or aiding or abetting any other person manufacturing or marketing, any directly competing products.

Rainworks sent AmeriSales the ninety-day notice of termination of the License Agreement for failure to pay minimum royalties on April 30, 2002.  Although negotiations continued into March of 2003, no new agreements were signed by the parties.

In their Amended Complaint, Plaintiffs assert fifteen claims for relief.  For purposes of these motions, the Court will focus on Counts 1, 2, 8, 10, 12, and 14, and Defendant Mill-Rose's Counterclaim, which are summarized as follows:

1.  Patent Infringement by GPI, Duffy, AmeriSales, Wilmington, and Mill-Rose

2.  Inducement of Patent Infringement by Duffy

8.  Breach of Contract by Mill-Rose

10.  Tortious Interference with Prospective Economic Advantage by GPI, Duffy, Wilmington, and AmeriSales

-4-

12.  Tortious Interference with Contract by Mill-Rose

14.  Piercing Corporate Veil - Duffy and GPI

- Mill-Rose's First Counterclaim (Declaration of Invalidity of the '068 Patent)

- Mill-Rose's Second Counterclaim (Declaration of Non-Infringement of the '068

Patent)

## II. LAW AND ANALYSIS

### Standard of Review

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006); *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005).  The initial burden to demonstrate the absence of a genuine issue of material fact rests with the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "When a motion for summary judgment is properly made and supported" the initial burden shifts to the opposing party, who "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2004); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).  A fact is material only if

its resolution "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005).  "Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, the court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Circ. 1996).  Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute. *Anderson*, 477 U.S. at 249-250.

**Patent Law**

In the area of patents, the substantive law of the Federal Circuit Court of Appeals is binding on this Court.  Pursuant to 28 U.S.C. § 1295(a), Congress vested the Federal Circuit with exclusive jurisdiction over appeals from the district court, if the jurisdiction of that court was based upon 28 U.S.C. § 1338.  Section 1338(a) provides in part that "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents ... ." *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826

-6-

(2002).

### Patent Infringement by GPI, Duffy, AmeriSales, Wilmington, and Mill-Rose (Count1)

Plaintiff Herdman owns United States Patent Number Des. 381,068 ('068) for the ornamental design for a gutter filter.  A design patent covers "any new, original and ornamental design for an article of manufacture."  35 U.S.C. § 171.  A design patent only covers the "ornamental design" of a product, and does not cover any functional or utility features in the design.  *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed.Cir. 1997).

Both Defendant Mill-Rose and the Duffy Defendants contend they are entitled to summary judgment on Plaintiffs' claim for infringement.  The test for design patent infringement is whether an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design.  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed.Cir. 2008).  In prior decisions, rendered since at least 1984, the test for patent design infringement required consideration of "both the perspective of the ordinary observer and the particular novelty in the claimed design."  *Id*. at 671.  Consequently, analysis included consideration of the "ordinary observer test" ***and*** the "point of novelty test."  The Federal Circuit, in *Egyptian Goddess*, now holds "that the "point of novelty" test should no longer be used in the analysis of a claim of design patent infringement."  *Id.* at 678.

> "Our rejection of the point of novelty test does not mean, of course, that the
> differences between the claimed design and prior art designs are irrelevant.  To
> the contrary, examining the novel features of the claimed design can be an

important component of the comparison of the claimed design with the
accused design and the prior art.  But the comparison of the designs, including
the examination of any novel features, must be conducted as part of the
ordinary observer test, not as part of a separate test focusing on particular
points of novelty that are designated only in the course of litigation."  *Id.* at
678.

Further,

"We emphasize that although the approach we adopt will frequently
involve comparisons between the claimed design and the prior art, it is not a
test for determining validity, but is designed solely as a test of infringement.
Thus, as is always the case, the burden of proof as to infringement remains on
the patentee.  However, if the accused infringer elects to rely on the
comparison prior art as part of its defense against the claim of infringement,
the burden of production of that prior art is on the accused infringer. ...
Regardless of whether the accused infringer elects to present prior art that it
considers pertinent to the comparison between the claimed and accused design,
however, the patentee bears the ultimate burden of proof to demonstrate
infringement by a preponderance of the evidence."  *Id.* at 678-79.

The overall appearance of the Defendants' gutter filter is fully cylindrical with a
circular cross-section.  By contrast, the bristles of the gutter filter design of the '068 patent
have a nearly ninety degree flattened or planar surface and a generally semi-circular cross-
section.  Since the design shown in the drawings of the '068 patent includes a laterally

-8-

trimmed bristle portion, and since this feature is absent in Defendants' brush, that distinction alone precludes infringement under the ordinary observer test.

Nevertheless, Defendants direct the Court's attention to prior art brush/filter designs. (Ex. H to ECF DKT #118; Ex. 9 and Ex. 10 to ECF DKT #100). These are examples of cylindrically-shaped twisted wire bristle brushes, identical to the design of the GutterPiller® gutter filters. None have the laterally-trimmed bristles creating a flat contact area found in the Hedgehog™ design.

In opposition, Plaintiffs as patentee, have supplied no contravening evidence, highlighting similarities between the claimed and accused designs nor disputing the prior art. Rather, Plaintiffs reassert that the record contains sufficient evidence to allow a reasonable jury to find Defendants have infringed the '068 Patent under the doctrine of patent marking estoppel. However, as the Court decided in its earlier Opinion and Order (ECF DKT #155) on Plaintiffs' Joint Motion for Summary Judgment, the patent marking estoppel doctrine does not apply to the conduct of Defendants, Duffy, GPI, Wilmington and Mill-Rose.

Plaintiffs have also neglected to present even minimal arguments on the issue of the ordinary observer test for design infringement. "It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) (citing *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)). Moreover, as the Federal Circuit very recently emphasized in *Egyptian Goddess*, 543 F.3d at 679, "the patentee bears the ultimate burden of proof to demonstrate infringement by a preponderance of the evidence." Plaintiffs have failed to meet their burden of proof; and therefore, summary judgment is

granted in favor of the Duffy Defendants and Defendant Mill-Rose on Count 1 of Plaintiffs'
Amended Complaint, as well as in Mill-Rose's favor upon its Second Counterclaim for a
Declaration of Non-Infringement of the '068 Patent.

**Inducement of Patent Infringement by Duffy (Count 2)**

At footnote 1 of Plaintiffs' Joint Memorandum in Opposition (ECF DKT #129),
Plaintiffs concede "that Count 2 of its Amended Complaint would fail if the Court finds as
matter of law that none of the Defendants infringed the '068 Patent as alleged in Count 1.
Plaintiffs recognize that a direct infringement is an element of a cause of action for
inducement of infringement."  Thus, summary judgment is granted in favor of the Duffy
Defendants and Defendant Mill-Rose on Count 2 of Plaintiffs' Amended Complaint.

**Breach of Contract by Mill-Rose (Count 8)**

In 1997, when Rainworks approached Mill-Rose about making and selling the
Hedgehog™ in the United States, Rainworks supplied Mill-Rose with confidential
information and samples of its product.  In furtherance of their potential business relationship,
the parties entered into a Confidential Disclosure Agreement.  In Count 8 of their Amended
Complaint, Plaintiffs allege "Mill-Rose breached the Confidential Disclosure Agreement by
disclosing and using, without authorization, confidential information relating to the
Hedgehog™ gutter protectors, and misappropriating the intellectual property and other rights
in the Hedgehog™ gutter protector belonging to Rainworks and/or Herdman."

Defendant Mill-Rose contends it did not use or misappropriate any of Rainworks'
confidential information, and/or any information Mill-Rose used or disclosed was already
known to Mill-Rose or was in the public domain.

The Amended Complaint is not specific about the types of confidential information which Rainworks accuses Mill-Rose of using or disclosing.  In answer to interrogatories, Plaintiffs identified the confidential information: 1.) bristle composition of the Hedgehog™ gutter filter; 2.) application of a sealant to the ends of the gutter filter; 3.) lateral trimming of the gutter filter and the method for lateral trimming; 4.) profile packaging; 5.) carton loading; 6.) use of horizontal hoppers; 7.) fixing system for securing the filter in awkward locations; and 8.) branding and bar coding of the gutter filter.  Mill-Rose disputes whether the evidence of record in this case establishes that much of this alleged confidential information was ever provided in 1997.  Mill-Rose did receive, at that time, some letters from Herdman, brochures and a sample of the Hedgehog™ gutter filter.

The lateral trimming is described in the '068 Patent; and therefore, is in the public domain.  "If a trade secret is patented there is no further right to secrecy.  The patent is a legal disclosure with the right to a limited, temporary monopoly granted as the reward for disclosure."  *Scharmer v. Carrollton Mfg. Co.*, 525 F.2d 95, 99 (6th Cir. 1975).  Moreover, Mill-Rose never manufactured a laterally trimmed gutter filter for Plaintiffs or for GPI.

The use of sealant on the end of the brush bristles was known in the industry for some time, even before Rainworks approached Mill-Rose.  (Ex. MM to ECF DKT #118).  The GutterPiller® brand of filters, with end sealants, were being advertised and sold in the United States since 2001 – that is, before Mill-Rose and GPI collaborated in late 2002 or early 2003.

In view of the admitted fact that Mill-Rose was the largest brush manufacturer in the world, any manufacturing knowledge was already in Mill-Rose's possession.  (Herdman Deposition, Ex. L to ECF DKT #118).

-11-

Defendant Mill-Rose, by way of the Declaration of Paul Miller, insists there is no evidentiary support for Plaintiffs' assertions about profile packaging; carton loading; use of horizontal hoppers; fixing system for securing the gutter filter in awkward locations; and branding or bar-coding the product.  Although Plaintiffs find fault with the declarant's protestations, they supply no specific evidence of their own to the contrary.

Rainworks informed Mill-Rose, by letter in 1997, that the bristles used on the Hedgehog™ gutter filter were black bristles made of polypropylene that resisted UV rays and had carbon added to "prevent[s] light from entering the bristle filament."  (Ex. I, Ex. O, and Ex. P to ECF DKT #118).  Mill-Rose did not disclose that information to GPI.  After the 1997 Chicago Hardware show, the use of black polypropylene bristles was widely advertised.  GPI manufactured gutter filters with UV protected polypropylene bristles prior to the time Mill-Rose made the product for GPI in 2002-2003.  Herdman admits that the bristle/filament composition cannot be identified simply upon visual inspection.  (Ex. L to ECF DKT #118; Ex. MM to ECF DKT #137).  Plaintiffs do not know what the composition of Mill-Rose's bristles are, nor whether they contain carbon.  (Ex. L to ECF DKT #118).  Only an expert can perform the test to determine the contents of the bristle composition; and Plaintiffs have no expert report nor testimony to that effect.

It is Plaintiffs' burden to establish the confidential nature of the information, and to demonstrate that Mill-Rose disclosed or used information which was not in its possession or in the public domain.  Plaintiffs have not met their burden, and have not shown there is any genuine issue of material fact regarding breach by Defendant Mill-Rose of the Confidential Disclosure Agreement of 1997.  Summary judgment is granted in favor of Defendant Mill-

Rose on Count 8 of Plaintiffs' Amended Complaint.

**Tortious Interference with Prospective Economic Advantage by GPI, Duffy,**

**Wilmington, and AmeriSales (Count 10)**

When the termination of the License Agreement between Rainworks and AmeriSales appeared imminent, Plaintiffs attempted to secure a substitute domestic and European Distributor for the gutter protectors.  One was P & K Hergt ("Hergt"), the European sublicensee who had manufactured the GutterPiller products sold under the License Agreement.  Another was Faultless Starch/Bon Ami ("Bon Ami").  Plaintiffs allege Duffy, on behalf of the related Defendants, contacted Hergt and Bon Ami and threatened to initiate legal action if either company agreed to distribute the GutterPiller product for Plaintiffs.  At his deposition, Herdman testified at pp. 196-199:

A.  I was informed by the Hergt Company in Germany that Mr. Duffy had indicated that he would take legal action against anybody who tried to distribute the Gutterpiller product in the United States or in Europe.

Q.  Who informed you of that?

A.  Mr. Andreas Rohweder, ...

------and------

A.  As I told you earlier, when I spoke directly with Peerless Starch/Bon Ami, they made it quite clear that they would not have any dealings with the product while Mr. Duffy was involved.

Plaintiffs also supply copies of e-mail exchanges between Herdman and Andreas Rohweder at the Hergt Company.  (Attachments to Declaration of Michael L. Herdman, ECF DKT #130).

-13-

In one communication, dated May 19, 2002, Rohweder writes:

> "I have heard from Tom [Duffy] about the cancelation [sic] or the 90 days notice. Anyhow the situation with Tom is very difficult, especially for me. Due to the situation my boss is – sorry – p***ed off. He want [sic] his money, and this is not a small amount for us. So he ordered me that I am not allowed to ship any goods to Tom unless we got a qualified payment like [] letter of credit or so and unless he pays a large amount for the open dues. ... So in general I am unable to ship either Amerisales goods (we have big orders from Amway) nor Gutterpiller (we have a large order from QVC for guaranteed sale) unless Tom is willing to release a big amount to us."

On June 25, 2002, Rohweder writes:

> "Laurie, as you know I have two parties in the U.S. I would like to talk about the Gutterpiller sales – but I must be very sure that the legal side is clear and we can really use the name Gutterpiller and the concept and the protection. ... But before some other guy in the U.S. will start with the concept we have to be quite sure that Tom will not interfere the business – thats [sic] my concern."

Again, on August 22, 2002, Rohweder writes:

> "Please be aware that GUTTERPILLER is by far not my major project and future business avenue. ... Please note that we never ever signed any contract with Tom or with one or more of his company's [sic] and we can do whatever we want with whom ever we want. ... Also all this license problems are to [sic] complicate [sic] for us – we would like to concentrate than [sic] on

our other business avenues and will sell out our stock of packaging etc. and
stop it afterwards.  Good luck – sorry about it but dont [sic] worry – I
understand your position."

The Duffy Defendants contend Herdman's testimony and supporting e-mails, demonstrating
he had been told by third parties that Mr. Duffy said he would take legal action against
anyone who tried to distribute GutterPiller products in the United States, is inadmissible
hearsay.  Plaintiffs counter with the argument that numerous hearsay exceptions apply.

First, Plaintiffs assert statements by Defendant Duffy are not hearsay because they are
admissions by a party opponent under Fed. R. Evid. 801(d)(2).  However, Defendants point
out that there are no statements in the record reported directly to Plaintiffs by Duffy; rather,
Herdman is reporting what a third party thought or what a third party said Duffy said.  The
Court agrees that the first hearsay exception does not apply.

Second, Plaintiffs argue the statements were made "by a person authorized by the
party to make a statement concerning the subject, or ... a statement by the party's agent or
servant concerning a matter within the scope of the agency or employment, made during the
existence of the relationship."  Fed. R. Evid. 801(d)(2) (C) and (D).  Defendants admit there
was an agency relationship between Hergt and AmeriSales.  (ECF DKT #135, p.14).
However, Plaintiffs have offered no evidence that any of the statements were made during the
scope of the agency relationship.  On this issue, the Plaintiff-proponents have the burden of
proof.  See, *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1254 (Fed.Cir. 2000).

Third, Plaintiffs contend the statements by Hergt and Bon Ami fall under the hearsay
exception for "then existing mental, emotional, or physical condition."  Fed. R. Evid. 803(3).

-15-

This argument is equally unavailing.  Although the statements in the e-mails and referenced in Herdman's deposition are admissible to show the speakers' state of mind, they are not admissible to explain why they had these feelings.  The statements are not admissible under the exception to show the truth of the contention that Duffy wrongfully threatened Bon Ami or Hergt with legal action.  (Discussion of exception and inadmissibility of e-mails, *McInnis v. Fairfield Communities, Inc*., 458 F.3d 1129, 1143 (10th Cir. 2006)).

Lastly, Plaintiffs direct the Court to the business records exception in Fed. R. Evid. 803(6).  Herdman offers his Declaration (ECF DKT #130), explaining how the e-mails are created and maintained in the course of Rainworks' regularly conducted business activities.  Even assuming the e-mails are admissible business records, they incorporate statements by an outside party who has no duty to make the statement, and whose statements are not verified as a standard business practice.  Thus, the statements Rohweder makes about what Duffy may have said or done are not admissible for their truth.  *United States v. Yates*, 553 F.2d 518, 521 (6th Cir. 1977).

For all the foregoing reasons, Plaintiffs have no evidence to support their claim for tortious interference with prospective economic advantage.  Summary judgment is granted on behalf of the Duffy Defendants on Count 10 of Plaintiffs' Amended Complaint.

**Tortious Interference with Contract by Mill-Rose (Count 12)**

Plaintiffs allege Defendant Mill-Rose knowingly interfered with their License Agreement with AmeriSales.  Tortious interference occurs when a party "improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract."  *Kenty v.*

*Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 418-19 (1995).  The elements of the cause of action are: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) the lack of justification; and (5) resulting damages.  *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176 (1999); *Kenty, supra*.

Defendant Mill-Rose admits knowledge of the License Agreement between Rainworks and AmeriSales, dated June 23, 2000.  (Declaration of Paul Miller, ¶¶ 3-4, ECF DKT #118, Exhibit EE).  Although the Miller Declaration states that prior to June of 2006, Mill-Rose was not aware of any association between GPI and AmeriSales. (*Id*. at ¶ 7), a letter from Herdman to Miller dated May 14, 2003 (Exhibit C to Miller Declaration) refers to AmeriSales as another Tom Duffy company.  "Mill-Rose began manufacturing brushes for GPI for use in gutters in late 2002-early 2003."  (Declaration of Paul Miller, ¶ 10).  This generalized time frame does not preclude a jury finding that Mill-Rose manufactured GutterPiller brushes for Tom Duffy's corporation, GPI, at a time coinciding with the License Agreement which was not effectively terminated until June of 2002.  (Exhibit B to Miller Declaration).  Paul Miller states further at ¶¶ 13-14:

13.  I was informed by Mr. Duffy that he had some past business relationship with Mr. Herdman, but that such business relationship had ended.  Mr. Duffy also informed me that the claim by Mr. Herdman that Rainworks owned the GutterPiller™ brand was not true.  Mr. Duffy informed me that GPI owned the trademark rights to the GutterPiller™ brand.

14.  Mr. Duffy never provided Mill-Rose with a copy of the License Agreement

-17-

between Rainworks and AmeriSales.

Miller does admit that Herdman's version of the relationship between Duffy and Rainworks and some sections from the License Agreement were contained in letters dated April 15, 2003 and May 14, 2003.  (*Id*. at ¶¶ 11-16).  Miller states Mill-Rose was not provided a complete signed copy of the License Agreement before the instant action was filed in 2006.  (*Id*. at ¶ 16).  Miller admits, nonetheless, that in order to ease his mind about manufacturing the brushes for GPI over Rainworks' objections, he obtained an indemnification agreement from Duffy.  (Paul Miller Deposition, ECF DKT #127, Exhibit B, pp. 55:4-57:5).

> Q.  Comfort level, fair.  And again, the comfort level being to take away some of the unease that you were feeling; is that right?
>
> A.  If I'm sued it's now on him.
>
> . . .
>
> Q.  So to the extent there was any contract in existence, and if Mr. Duffy was breaking it, your perspective was, look, that's your problem and this indemnification agreement makes it your problem?
>
> A.  Right.
>
> *Id.*

In consideration of all the evidence produced on this issue, there are genuine issues of material fact as to what was known by Mill-Rose and when it was known in relation to the License Agreement.  Summary judgment is, therefore, denied on Count 12 of Plaintiffs' Amended Complaint.

## **Piercing Corporate Veil – Duffy and GPI (Count 14)**

The Duffy Defendants seek dismissal of Count 14, contending GutterPiller and AmeriSales were separate corporate entities, and at all times, the corporate formalities were observed. This Court previously determined that Count 14 does not recite an independent cause of action; and, in any event, Plaintiffs failed to establish the grounds for disregarding the corporate form. (ECF DKT #155). It is unnecessary to repeat the analysis here. Count 14 of Plaintiffs' Amended Complaint is dismissed.

### Declaration of Invalidity of the '068 Patent (Defendant Mill-Rose's First Counterclaim)

Mill-Rose asserts that patented designs which are primarily functional, rather than ornamental, are invalid. *Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 238 (Fed. Cir. 1986). "[T]he design of a useful article is deemed to be functional when the appearance of the claimed design is 'dictated by' the use or purpose of the article" and that "if the particular design is essential to the use of the article, it cannot be the subject of a design patent." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). Mill-Rose insists, when the design of the '068 patent is viewed in its entirety, the utilitarian purpose predominates. The appearance is dictated by functionality, not ornamentality. Thus, Mill-Rose asks the Court to find Plaintiffs' Patent '068 invalid.

Patents enjoy a presumption of validity. Mill-Rose can only overcome this presumption with clear and convincing evidence. 35 U.S.C. § 282; *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1563 (Fed. Cir. 1997). Moreover, whether a patented design is functional or ornamental is a question of fact. *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997). The Court will not intrude upon the province of the jury, i.e., resolving issues of fact and determining satisfaction of the clear and convincing burden of

-19-

proof.

Mill-Rose also asserts Plaintiff Herdman made intentional misrepresentations before the U.S. Patent Office with regard to the figures and drawings submitted with his Application in 1995; thus rendering the '068 Patent unenforceable.  As this Court, in its prior Opinion and Order (ECF DKT #155) noted: "Intent to mislead or deceive is a factual issue that, if contested is not readily determined within the confines of Fed.R.Civ.Proc. 56." *Kangaroos U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1573 (Fed. Cir. 1985) (citing *Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 185, 190 USPQ 273, 277 (8th Cir. 1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751, 192 USPQ 543 (1977)).  Therefore, the issue of Plaintiffs' alleged fraudulent submission before the U.S. Patent and Trademark Office is more appropriately left for the jury.

Defendant Mill-Rose's Motion for Summary Judgment on its First Counterclaim is denied.

**Award of Reasonable Attorney Fees**

35 U.S.C. § 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  In each of their Counterclaims, Defendants ask the Court to determine their Counterclaims are "exceptional."  The application of this statute is discretionary with the District Court; and the awarding of fees is extraordinary, and not the rule of thumb.  *Uniflow Manufacturing Co. v. King-Seeley Thermos Co.*, 428 F.2d 335, 340-41 (6th Cir. 1970).  It is well-settled that "under this section such fees are not to be allowed as a matter of course for Congress did not intend recovery of attorney fees to become the usual thing in patent cases, that the section commits the matter to the discretion of the District

-20-

Court, that the criterion for its exercise is bad faith of the unsuccessful party. ..." (citations omitted).  *Turchan v. Cincinnati Milling Machine Co.*, 208 F.2d 228, 229 (6th Cir. 1953). Thus, the Court declines to award attorney fees upon the request of both Defendants in their Counterclaims.

### III. CONCLUSION

For all the foregoing reasons,  the Motion (ECF DKT #99) of Defendants, Gutterpiller, Inc. ("GPI"), Wilmington International, Inc. and Thomas Duffy, for Partial Summary Judgment on Counts 1, 2, 10, and 14 of Plaintiffs' Amended Complaint is granted, and the Motion (ECF DKT # 118) of Defendant, The Mill-Rose Company ("Mill-Rose"), for Summary Judgment of Non-Infringement, Invalidity, and Unenforceability of the '068 Patent, No Breach of Contract, and No Tortious Interference With Contract (Counts 1, 2, 8 and 12 of Plaintiffs' Amended Complaint and Defendant Mill-Rose's Counterclaim) is granted in part and denied in part.


**IT IS SO ORDERED.**

**DATE: _March 31, 2009_____**


**S/Christopher A. Boyko_____**
**CHRISTOPHER A. BOYKO**
**United States District Judge**